IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NUMBER: |
| : | |
| ELMER STEWART RHODES III, : | 22-cr-15-APM |
| KELLY MEGGS, : | |
| KENNETH HARRELSON, : | |
| JESSICA WATKINS, : | |
| ROBERTO MINUTA, : | |
| JOSEPH HACKETT, : | |
| DAVID MOERSCHEL, : | |
| THOMAS CALDWELL, and : | |
| EDWARD VALLEJO, : | |
| : | |
| **Defendants.** : | |

## OPPOSITION TO MOTION TO DISMISS

The United States respectfully opposes the defendants'[1] motion to dismiss the superseding indictment (ECF No. 170). Although the motion claims that the superseding indictment should be dismissed because of some sort of prosecutorial "misconduct" and/or because the grand jury was "biased," neither argument has any merit.

The motion accuses the government of committing "misconduct" by asking the grand jury to return a superseding indictment around the time that the House Select Committee to Investigate the January 6th Attack on the United States Capitol was conducting public hearings. Mot. at 4-5. But the defendants have not identified any authority indicating that the government commits misconduct by obtaining an indictment in a case that has received extensive pretrial publicity. Indeed, if that were the case, the government would be hamstrung in its ability to promptly indict the most heinous and notorious crimes.

---

[1] The motion was filed by Defendants Minuta, Caldwell, Harrelson, Watkins, Moerschel, and Meggs. Defendants Rhodes, Hackett, and Vallejo did not join.

Exposure to pretrial publicity can, in certain circumstances, disqualify people from serving on a petit jury. *Skilling v. United States*, 561 U.S. 358, 381. This is because "[t]he theory of our trial system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Id.* at 378 (brackets omitted) (quoting *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907)). But even petit jurors "need not enter the box with empty heads in order to determine the facts impartially." *Id.* at 398. "It is sufficient if [a] juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

In contrast to the petit jury, which must reach its decision based solely on the evidence admitted in court, the grand jury is not limited to considering evidence that would be admissible at trial. Thus, the grand jury may consider a defendant's admissions that are "incompetent" based on "duress," *Holt v. United States*, 218 U.S. 245, 249, 252 (1910), as well as hearsay, *Costello v. United States*, 350 U.S. 359, 363 (1956). The Supreme Court has soundly rejected the notion that indictments may be "held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury." *Costello*, 350 U.S. at 363. Instead, "[an] indictment returned by a legally constituted and unbiased grand jury . . . , if valid on its face, is enough to call for trial of the charge on the merits." *Id.*

In part because of this broad latitude given to the grand jury, the Supreme Court has never held that an indictment must be set aside based on grand jurors' exposure to pretrial publicity. Indeed, in *Beck v. Washington*, 369 U.S. 541, 548-49 (1962), the Court rejected a claim that "the grand jury was biased," even though the defendant had testified before a highly publicized Senate committee hearing and had invoked his Fifth Amendment right to remain silent. In *Beck*, the

2

defendant's "appearance before the Senate Committee was current news of high national interest" and was "widely publicized throughout the Nation" and locally. *Id*. at 546. And the grand jurors were not specifically admonished "to disregard or disbelieve news reports and publicity concerning" the defendant." *Id.* at 548. The Supreme Court determined that the defendant had "failed to show that the body which indicted him was biased or prejudiced against him." *Id.* at 549.

The Ninth Circuit also rejected a claim of grand jury bias in *Silverthorne v. United States*, 400 F.2d 627, 631 (9th Cir. 1968), another case involving a defendant who was the subject of a Senate committee hearing with "particularly adverse" publicity. In rejecting the defendant's claim, the court observed that any "illegality the Senate committee uncovers cannot become forbidden fruit of the grand jury's consideration merely because in the process of uncovering, prejudice to the perpetrator may accrue." *Id.* at 634. Thus, there was no evidence that the "grand jury was motivated by facts or circumstances other than those which were presented to it." *Id.* The court explained that its conclusion that the defendant suffered no prejudice was "further supported by the fact that the grand jury deliberates and indicts, as an accusing body, on the standard of 'reasonable probability' that a crime has been committed by some person." *Id.* A grand jury "is not a trial body" and "[t]he quantum of evidence necessary to indict is not as great as that necessary to convict." *Id.* The court reasoned that, "[i]f a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence." *Id.*

*Beck* and *Silverthorne* demonstrate that the defendants' claims here are unavailing. In both of those cases, the defendant himself was the subject of the congressional hearing. Here, by contrast, the Select Committee's hearings are far broader than the actions of any particular

individual.  Indeed, the six defendants seeking dismissal have not even alleged that they were mentioned by name during the Select Committee's hearings.  The mere fact that there is overlap between the subject of the Select Committee's investigation and the grand jury's investigation does not mean that the grand jury is precluded from considering evidence or adding charges against these defendants.  And, as *Silverthorne* explained, any possibility that the grand jury was affected by adverse publicity can be adequately addressed by the safeguard of a trial by an impartial petit jury.  *Cf.* June 28, 2022 Mem. Op. and Order at 43 (ECF No. 176) ("To be sure, news coverage of the events of January 6th has been extensive locally.  But '[p]rominence does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance.'") (quoting *Skilling*, 561 U.S. at 381) (alterations in original).

Moreover, the superseding indictment was returned by same grand jury that has been empaneled since January 8, 2021, and that returned a total of nine indictments in the *Crowl* case, 21-cr-28, and two in the present *Rhodes* case, 22-cr-15.  The fact that the grand jury returned the original indictment in this case in January 2022, and that the superseding indictment did not add any new defendants or counts, means that the grand jury, by definition, could not have been influenced—let alone improperly biased—by the congressional hearings in June 2022.

Nor did the government commit "misconduct" by seeking the superseding indictment when it did.  A court's "supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's functions."  *United States v. Williams*, 504 U.S. 36, 46 (1992) (internal citation and quotation marks omitted).  But the defendants cannot point to any rule that prohibits the government from presenting evidence to a grand jury that may have been exposed

4

to publicity about the crime.

In *United States v. Ethan Nordean*, 21-cr-175 (TJK), another case involving the attack on the Capitol, Judge Kelly rejected those defendants' contention that the government somehow "delayed the return of the most recent indictment to coincide with the Committee's hearings." June 24, 2022 Mem. Order (ECF No. 419) at 3 n.3. As Judge Kelly pointed out, "the publicity generated by the hearings hardly appears to have turned on the precise charges pending against Defendants." *Id.* The same is true here: nothing about the Committee's hearings relates to the grand jury's decision to supersede the indictment to (1) add a theory of liability about the purpose of the seditious conspiracy in paragraphs 15 and 16, (2) add a theory of liability to the charge against Stewart Rhodes under 18 U.S.C. § 1512(c)(1) in paragraph 148, or (3) remove two defendants (Joshua James and Brian Ulrich) who have pleaded guilty.

The defendants' motion claims that the government's June 21, 2022, consent to continue trial in *Nordean* is a "concession" that the government "recognizes there is unfair prejudicial [*sic*] in the District of Columbia juror pool that can only be addressed *after* the Committee hearings have been concluded." Mot. at 4. Not so. As explained in that pleading, the government was concerned about the release of information *during the trial*, after jeopardy had attached, as it related to the parties' ability to incorporate that information into their trial presentations. The government has never conceded that the jury pool in the District of Columbia is biased.

Finally, the defendants rely heavily on *United States v. Delaney*, 199 F.2d 107, 113 (1st Cir. 1952), Mot. at 2-3, but that case concerned a trial court's failure to grant a trial continuance; it had nothing to do with grand jury proceedings. *See* 5/17/22 Tr. at 109 (The Court: "The holding [in *Delaney*] was there's an abuse of discretion for the trial judge not to continue the case in light a congressional hearing, correct? . . . It didn't have anything to do with . . . a venue transfer.").

And in the context of prosecutions arising out of Watergate, the D.C. Circuit both distinguished *Delaney* and found that "decisions by the Supreme Court subsequent to *Delaney*" counseled against the D.C. Circuit exercising its unique "supervisory power" to insist that the trial court grant the defendants' requests for a continuance or change of venue. *United States v. Haldeman*, 559 F.2d 31, 63 n.40 (D.C. Cir. 1976) (en banc) (per curiam).

There is no basis to dismiss the superseding indictment. The government therefore respectfully requests that the Court deny the defendants' motion.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:   /s/
Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

/s/
Justin Sher
Alexandra Hughes
Trial Attorneys
National Security Division,
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20004