IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | ) Criminal No. 1:22-cr-00015-APM<br>)<br>) |
| v. | )<br>)<br>) |
| **KELLY MEGGS,** | )<br>)<br>) |
| **Defendants** | )<br>)<br>) |

**DEFENDANTS' OPPOSITION TO MOTION REGARDING ANTICIPATED TRIAL EVIDENCE AND MOTION TO BAR THE INTRODUCTION**

Defendant Kelly Meggs, by and through the undersigned counsel, and pursuant to this court's Pretrial Order, dated May 12, 2022, (ECF 133), hereby file this Motion in Limine, and Memorandum of Points and Authorities in Support thereof, to bar the government's intent to introduce 404(b) evidence as set forth in ECF 187 and 190 because the alleged evidence are highly prejudicial while not genuinely probative.

1.     The Government filed a Motion Regarding Anticipated Trial Evidence And Notice Pursuant To Federal Rule of Evidence 404(B), ECF 190 / ECF 187, on July 8, 2022.

2.     The Government submits that "[t]he government plans to introduce Brown's statements and the evidence collected from the search of Brown's property, it seeks to introduce evidence regarding Jerry Brown's actions on or about January 6th as an unindicted co-conspirator."  The government specifically submits that it seeks to introduce that "the government subsequently seized explosives from Brown." The government writes, "[o]n September 30, 2021 pursuant to an authorized search warrant, the government seized two illegal short barrel firearms from Brown's residence and military ordinance grenades from Brown's RV—the same RV that Brown used to travel to Washington, D.C. on January 6." (Id. at p. 17).

3.     In this submission, simultaneously the government sets forth that it "*is unaware whether*

*Brown deposited the explosives at the Comfort Inn in Virginia or retained them in his RV, which he parked in College Park, Maryland."* (ECF 187 / 190 filed July 8, 2022, at p.17, f.n. 4).

4. This is because other than speculation, the government does not have evidence that Mr. Brown possessed the subject unregistered weapons and illegal grenades on January 6, 2021, and by admitting that they do not know *where the weapons were located* simultaneously means the government lacks the foundation to show that they were anywhere near the Capitol, or that he told anyone that he possessed *illegal* weapons.

5. Agents executed a search warrant on Jerry Brown on or about September 30, 2021, which applied to both Defendant's residence and R.V., in which they found unregistered short-barrel firearms, grenades, and classified information, leading to the charges in his case. (MDDC Florida, Tampa Div., 08-21-cr-00348-SCB-SEF, ECF 196 at p. 2).

6. On October 19, 2021, Defendant Jerry Brown was charged in an Indictment with two counts of possessing unregistered firearms and two counts of possession of unregistered explosive devices, in violation of 26 U.S.C. §§ 5861(d) and 5871; and improper storage of grenades, in violation of 18 U.S.C. §§ 842(j) and 844(b). (*Id*. at ECF 21).

7. While the search warrant was upheld finding probable cause in said action, Mr. Brown is not indicted with possession of any of these unregistered weapons named in the Superseding Indictment prior to the search of September 30, 2021. (See ECF 159).

8. Furthermore, Mr. Brown is not indicted with possession of any of these unregistered weapons in the District of Columbia, or in the surrounding area whether Maryland or Virginia. *See Id*.

9. Instead, on April 12, 2022, Defendant Jerry Brown was charged in a Superseding

Indictment with those same counts and four additional counts of unauthorized retention of national defense information, in violation of 18 U.S.C. § 793(e). (*Id.* at ECF 159).

10. Instead the government attempts to connect the seizure of illegal weapons in September 30, 2021 to the alleged co-conspirator, because of text messages and "[o]n January 4, 2021, Brown supplied a helmet to Florida Oath Keeper Berry, who met Brown at Brown's house, and then caravanned with Berry, Meggs, Harrelson and other Florida Oath Keepers first to North Carolina, where they rendezvoused with additional Oath Keepers, and then to the Washington, D.C. area." (DDC 22-cr-15-APM, ECF 187 at p. 16).

11. What makes the charges on the alleged evidence of Mr. Brown's subject unregistered weapons and grenades, is that these weapons were seized not only at a time well outside the alleged conspiracy, but also they remain unrelated in time and place from the events on January 6th. Caleb Berry's statement on a helmet does not change that – nor does any alleged claim that Mr. Meggs or others may have been told that there were "some" weapons such as explosives in his RV.

12. Instead the government seeks the introduction of this allegation regarding Jerry Brown's subject unregistered weapons and grenades, without any sound predicate becomes highly prejudicial to these defendants.

13. As a fact that this court can take notice of, registered weapons in possession of a party that remain in states with reciprocity rules on registered weapons, is not actually a violation. The issue herein is that the seized weapons, outside the time of the alleged conspiracy, on or about September 30th 2021, were unregistered and outside of the statutory requirements on how they are to be maintained or whether they can be possessed legally, but there is no evidence linking knowledge or intent of the presence of "illegally possessed weapons" such as the

grenades, to nine (9) – ten (10) months earlier to January 6th, much less the knowledge of their illegality to any other defendant in this action, such as Mr. Meggs.

14. Further, T.A., who is identified in the Complaint as the other resident living with Mr. Brown, was questioned and stated in regard to the grenades, stated "that she was not aware of their existence." (MDDC Florida, Tampa Div., 08-21-cr-00348-SCB-SEF, ECF 01, Complaint at ¶18).

15. Further, a significant fact in the filings is that at the time the affidavit in support of the search warrant was submitted to the magistrate judge, Defendant had listed his residence for sale on the real estate website Zillow. (Court Order, ECF 196 *citing* Doc. 193, Ex. 1 at 22, 29, 31 at 43). The affidavit for the search warrant also cited Witness 1's statement that, before the residence was put up for sale on Zillow, there had been *"multiple boxes and weapons scattered throughout the house."* (Court Order, ECF 196 at p. 8, *citing Id*. at 45, emphasis added).

16. The affidavit alleged that, because Defendant was in the process of moving and had recently purchased the trailer, it was *"probable that many of [his] possessions, including electronics, guns, ammunition, and explosives, which constitute potential evidence in the investigation, have been moved to the RV or the Trailer."* (*Id*. at pp. 8-9 *citing Id*.).

17. Instead the government makes clear in that it "is unaware whether Brown deposited the explosives at the Comfort Inn in Virginia or retained them in his RV, which he parked in College Park, Maryland" and that "[d]uring this same period, Meggs informed Berry that Brown possessed explosives in his Recreational Vehicle ("RV"), to which the government conveniently footnotes "[t]he government is unaware whether Brown deposited the explosives at the Comfort Inn in Virginia or retained them in his RV, which he parked in College Park, Maryland.

4

18.     Firstly, the Caleb Berry statement on its face lacks credibility, but secondly, the government cannot suggest that Mr. Meggs condoned the possession of illegal grenades to be at the events on January 6th – specifically the subject seized weapons found nine (9) months beyond the alleged conspiracy in January, and thus this admission would be highly prejudicial while minimally relevant if at all to any connection to the alleged conspiracy.

19.     Mr. Brown was a U.S. Army Special Forces service member, and the presumption would be that he understands the law on registered weapons.  Back at the time of the sixth indictment, the government alleged that Jessica Watkins and Kelly Meggs had asked questions and discussed what types of weapons **would be legal** in the District of Columbia.  (See Sixth Indictment, p. 10, par. 40).  The rational presumption being that these defendants believed legal weapons were being stored in states with reciprocal laws.

20.     It is precisely this type of unsubstantiated allegation that is based on the premise of character and acting in conformity therewith, that FRE 404(b) precludes.

21.     The government cites U*nited States v. Lorenzana-Cordon*, 141 F. Supp. 3d 35, 40 (D.D.C. 2015) however, that case makes clear the standard on intrinsic versus extrinsic evidence and cites to *Bowie*, stating that "the application was straightforward. The D.C. Circuit held there that evidence that the defendant had been caught with counterfeit currency one month prior to his arrest for possession of counterfeit bills with the exact same serial numbers *was not intrinsic* to the later crime of possession. *Id*.  The Court concluded that although all of the bills "were doubtless from the same batch, and the evidence indicated that Bowie purchased them at one time[,] . . . the indictment charged him only with possession of the counterfeit bills found on [the later date]." *Id*. Accordingly, the evidence had to be analyzed under the rubric of Rule 404(b). *Id*.

22.     Similarly, there is no basis to allege that illegal / unregistered weapons found on or about September 30, 2021 were intrinsic to the conspiracy alleged on January 6th or even that of a conspiracy alleged to continue until January 20th. Accordingly, the evidence had to be analyzed under the rubric of Rule 404(b).

23.     When requesting that evidence be entered under 404(b), "[t]he Government must provide a clear explanation on the record of the chain of inferences on which it was relying." *United States v. Murray*, 103 F.3d 310 (3d Cir. 1997). **If there is no logical connection to a material issue, without referencing the defendant's predisposition to commit bad acts, then the evidence is impermissible. *Harris*, 938 F.2d 401 (3d. Cir. 1991)**. Furthermore, if the Court subsequently rules that the evidence is admissible, then in its ruling the Court must be able to map out a logical connection between the evidence and its relevance, exclusive of propensity. *Pinney*, 27 V.I. 412, 967 F.2d 912 (3d Cir. 1992). 'Where the evidence is being offered to prove the defendant's state of mind at the time of the crime, the court cannot permit evidence that is too remote and too unconnected to the events surrounding the crime that the Defendant is currently being tried for. *People of the V.I. v. Carty*, 50 V.I. 34, 43, 2008 V.I. LEXIS 11, *11-12 ( citing *United States v. Johnson*, 879 F.2d 331 (8th. Cir. 1989). To be admitted, the prospective evidence must be, "relevant to a material issue, similar in kind *and close in time* to the crime charged, and substantially more probative than prejudicial." *Johnson*, 879 F.2d 331, 334 (8th. Cir. 1989) (*emphasis added*)).

24.     The government cites *United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (*en banc*) ("Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation, and the like."), but that case actually explained the rules including that "[a]s to Rule 403, each case will turn on the discretionary judgment of the trial court and its assessment, not of relevance, but of the evidentiary value of the government's Rule 404(b)

6

evidence. On the same side of the balance, the trial court will take into account the effect of a limiting jury instruction to protect the rights of the accused. *See* FED. R. EVID. 403, advisory committee notes."

25. The government cites *United States v. Gaviria*, 116 F.3d 1498, 1515, (D.C. Cir. 1997), but that court addressed a drug conspiracy case, and explained that there is no overt act requirement for a § 846 conspiracy conviction in contrast to the general criminal conspiracy statute, [but] *18 U.S.C. § 371, which explicitly requires proof of an overt act. Id*. at 1515, f.n. 17 *citing United States v. Pumphrey*, 265 U.S. App. D.C. 306, 831 F.2d 307, 308 (D.C. Cir. 1987).

26. The government further cites to *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996)(which is a drug case, that explained that "[t]he court has emphasized that, with regard to drug attributions based on a defendant's relevant conduct, the district court must make " "individualized findings … linking each appellant's scope of participation in the conspiracy with the quantum of drugs attributed to [him].', and is unlike the case at issue).

27. The government further cites to *United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996), but that case is again distinguishable as a drug conspiracy case and one in which the evidence at issue was '"related to events taking place outside the indicted period, because it focused on the origin and scope of the Newton Street conspiracy [the drug conspiracy at issue therein] in which appellants participated, it was relevant to establish the formation and contours of the conspiracy and to show appellants' knowledge of the conspiracy and their intent to join."' *Id*. (further citations omitted).

28. Rule 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice…." In these cases, the concern about "prejudice" focused on the danger of the jury using the other crimes evidence in a way the rules

do not permit--to conclude that because the defendant committed some other crime, he must have committed the one charged in the indictment. This danger, of course, will be present in every Rule 404(b) case… 'In short, the Rule 403 inquiry in each case involving Rule 404(b) evidence will be case-specific.' *United States v. Crowder*, 141 F.3d 1202, 1210, 329 U.S. App. D.C. 418, 426, (D.C. Cir. 1998).

29. Clearly the danger here of the jury using the other crimes evidence in a way the rules do not permit of the weapons and grenades found nine months later, well outside the time of the conspiracy, to be used as evidence in the case at bar is highly prejudicial and lacks a sound predicate for admissibility.

WHEREFORE, Defendant Kelly Meggs respectfully requests that the Court grant this Motion in Limine to bar this evidence at trial where it is highly prejudicial while not relevant to any specific intent under Federal Rules of Civil Procedure 403 and Rule 404(b).

[signature next page]

        Respectfully submitted,

        /s/ *Juli Z. Haller*
        Juli Zsuzsa Haller, (DC 466921)
        The Law Offices of Julia Haller
        601 Pennsylvania Avenue, N.W., Suite 900
        Washington, DC 20004
        Telephone: (202) 729-2201
        HallerJulia@outlook.com

        /s/ *Stanley Woodward*
        Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
        Brand Woodward, Attorneys at Law
        1808 Park Road NW
        Washington, DC  20010
        202-996-7447 (telephone)
        202-996-0113 (facsimile)
        Stanley@BrandWoodwardLaw.com

        Counsel for Defendant Kelly Meggs

## Certificate of Electronic Service

I hereby certify that on July 29, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

        /s/ *Juli Z. Haller*
        Juli Zsuzsa Haller, (DC 466921)
        The Law Offices of Julia Haller
        601 Pennsylvania Avenue, N.W., Suite 900
        Washington, DC 20004
        Telephone: (202) 729-2201
        HallerJulia@outlook.com