IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) Case No. 1:22-cr-00015-APM<br>) |
| v. | ) |
| KELLY MEGGS, | )<br>)<br>) |
| Defendant. | )<br>) |

**DEFENDANT KELLY MEGGS'S MOTION TO CONDUCT A DEPOSITION OF
<u>JOHN L. SIEMENS PURSUANT TO FED. R. CRIM. P. 15</u>**

Defendant Kelly Meggs, by and through the undersigned counsel, respectfully moves this Court, pursuant to Rule 15 of the Federal Rules of Criminal Procedure, to authorize the Deposition of Mr. John L. Siemens.

**I.    PROCEDURAL BACKGROUND**

The operative indictment as against Mr. Meggs describes the Oath Keepers as, "a large but loosely organized collection of individuals [--] some of whom are associated with militias [--] [with a] focus on recruiting current and former military, law enforcement, and first-responder personnel," and charges various members with, *inter alia*, having participated in a scheme – seditious conspiracy – to illegally oppose the lawful transition of presidential power leading up to and on January 6, 2021.  Superseding Indictment at 3 ¶ 3 (ECF No. 167).  Yet nowhere in the operative indictment does the government acknowledge that the Oath Keepers, including Mr. Meggs, had provided security services at numerous events including for Roger Stone in Florida, at protests surrounding the death of Breonna Taylor in Louisville, Kentucky, and in Washington, DC.

To that end, on September 6, 2022, Defendant Stewart Rhodes filed a motion to substitute counsel in which he asserted that his counsel had failed to file, "a number of necessary motions," including, "a motion for leave to depose a necessary but unavailable key defense witness, Colonel John Siemens." Rhodes described Siemens as being, "in nurses' care due to two recent strokes and two heart attacks" and the, "most important organizer for many Oathkeeper operations and events." Mot. at 6 (Sep. 6, 2022) (ECF No. 290).

This was the first time defense counsel had learned of Mr. Siemens' identity. In the three weeks since, defense counsel has diligently searched the government's discovery in this case for reference to Mr. Siemens to learn more about why Defendant Rhodes sought Mr. Siemens's deposition. Mr. Siemens, for example, participated in the November 9, 2020, GoToMeeting Session that the government alleges serves as the start of the conspiracies with which they've charged Mr. Meggs (266T-WF-3489093 Serial 8). Mr. Siemens also appears on several of the signal chats the government has extensively relied upon utilizing the moniker, "Big Bird (Tx)." The government does not otherwise appear to have made contact with Mr. Siemens or obtained any information concerning his role with the Oath Keepers.

On September 28, 2022, defense counsel obtained for the first time a written summary of an interview of Mr. Siemens conducted by Mr. Rhodes's investigator in May of 2022. That same day, defense counsel advised the government that it wished to take the deposition of Mr. Siemens because defense counsel understood Mr. Siemens had a medical condition that precluded his travel to this District for testimony. At the government's request, defense counsel provided the interview summary of Mr. Siemens to the government – *the same day defense counsel had received it.*

The written summary notes that Mr. Siemens can provide significant background concerning the provision of security by the Oath Keepers at various events dating back to 2017. (attached hereto as Exhibit A).  Specifically, Siemens can testify that between October 2019 and November 2019, the Oath Keepers were recruited to assist with security details for Trump rallies in Texas and Mississippi.  Further, Mr. Siemens can testify that, because of the Oath Keepers' reputation for providing a competent security detail, beginning in May 9, 2020, Mr. Siemens repeatedly provided the security detail for Allen West, then-chairman of the Republican Party of Texas.

In summary, Mr. Siemens's testimony will corroborate the assertion that the Oath Keepers have long served to provide security services as well as disaster relief, including having provided security for rallies in Ferguson, Missouri and Louisville, Kentucky; assistance with Border Patrol Operations; engagement with local law enforcement as community liaisons, as well as hurricane and disaster relief in Houston and Puerto Rico.  Mr. Siemens can also testify that the Oath Keepers have strict rules of engagement and a vetting process designed to ensure that members of the group abide by these rules, as well as the longstanding Oath Keepers policy to obey each state's respective gun laws when the Oath Keepers travel to or perform any sort of security functions.

Despite being able to provide this inherently material evidence in this trial, in the Spring of 2022, Mr. Siemens encountered multiple serious health issues, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  These health issues, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, make Mr. Siemens unable to leave Texas to provide testimony in this trial  At the request of defense counsel, on September 26, 2022, Mr. Siemens's doctor provided a letter confirming Mr. Siemens's inability to travel as a result of his current

health conditions.  (attached hereto as Exhibit B.) Also on September 26, 2022, Vashti E. Siemens, Mr. Siemens's wife, provided counsel with a letter highlighting the severity of Mr. Siemens's condition, █████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████ . (attached hereto as Exhibit C.)

## II.     LEGAL STANDARD

Rule 15 of the Federal Rules of Criminal Procedure allows for the deposition of a prospective witness by motion, which the Court may grant as a due to "exceptional circumstances[,] and in the interest of justice."  Fed. R. Crim. P. 15(a).  To establish exceptional circumstances under Rule 15, the moving party must establish "both that the witness will likely be unavailable to testify at trial and that the witness's testimony is material." *United States v. Sanford, Ltd.*, 860 F. Supp. 2d 1, 4 (D.D.C. 2012).  *See also United States v. Jefferson*, 594 F. Supp. 2d 655, 664 (E.D. Va. 2009); *United States v. Hajbeh*, 284 F. Supp. 2d 380, 382 (E.D. Va. 2003).  Courts also consider whether the interests of justice favor the taking of a particular witness's testimony. *See Sanford*, 860 F. Supp. 2d at 3-4; *Jefferson*, 594 F. Supp. 2d at 671; *Hajbeh*, 284 F. Supp. 2d at 382.  Further, a movant must "make some showing, beyond unsubstantiated speculation, that the evidence exculpates him." *See Sanford*, 860 F. Supp. 2d 1 at 4 (quoting *United States v. Straker*, 567 F. Supp. 2d 174, 180 (D.D.C. 2008)).

Other circuits have found that poor or declining health likely constitutes exceptional circumstances deeming a deposition appropriate under Rule 15.  *See, e.g., United States v. Campbell*, 845 F.2d 1374, 1378 (6th Cir. 1988) (advanced age as basis for unavailability), *cert. denied*, 488 U.S. 908 (1988); *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984) (government witness's poor health and advanced age, which prevented them from leaving their home located 60 miles from courthouse, was "exceptional circumstance"); F*urlow v. United*

*States*, 644 F.2d 764, 766 (9th Cir. 1981) (court did not abuse discretion in allowing deposition to be taken where witness was ill and purpose of taking deposition was to preserve testimony for trial), cert. denied, 454 U.S. 871 (1981); *United States v. Karoly*, No. CRIM.A. No. 08-592, 2009 WL 1872083, at *2-3 (E.D. Pa. June 29, 2009) (granting Rule 15 deposition for witness aged 77 who had been diagnosed with leukemia and travel exacerbated her condition); *United States v. Irwin*, No. C1-05-21, 2005 WL 1656846, at *1 (D.N.D. June 30, 2005) (granting motion to depose witness who had "recently suffered a massive stroke"); *United States v. Sudeen*, No. CRIM.A. 02-062, 2002 WL 31427364, at *1-2 (E.D. La.Oct. 28, 2002) (granting motion to depose witness who was 72 years old, in poor health, and resided in Poland).

In order to determine whether the unavailable witness's testimony is material and exculpatory, courts apply the standards developed in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *See Sanford*, 860 F. Supp. 2d at 4. Thus, evidence is material if it is exculpatory and "not corroborative or cumulative of other evidence." *See id.* (quoting *Haljbeh*, 284 F. Supp. 2d at 383-85). In cases in which the Defendant may only suspect that certain information exists which meets *Brady*, "he is not required . . . to make a particular showing of the exact information sought and how it is material and favorable." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995). There, a defendant only needs to make a "plausible showing" of how the information is material and favorable to his defense, identifying the requested information with some "degree of specificity." *Pa. v. Ritchie*, 480 U.S. 39, 58 n. 15 (1987). *See also United States v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996) (noting that material may be subject to disclosure if "the accused is able to identify the requested confidential material with some degree of specificity.").

In evaluating proffers of a potential witness's testimony, courts consider whether there is a "credible, reliable basis to believe that the witness would testify as forecasted . . . ." *Jefferson*,

5

594 F. Supp. at 669.  The submission of affidavits is not required. *See, e.g. United States v. Ordonez*, 242 F. Supp. 3d 466, 473-74 (E.D .Va. 2017) (accepting as true an attorney's proffer that the witness would support the defendant's alibi defense); *United States v. Drogoul*, 1 F.3d 1546, 1553-54 (11th Cir. 1993) (accepting as true defendant's assertion that the witness's testimony would be material to the case when several of defendant's pleadings indicated that the testimony would be central to defense's theory at trial); *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008) (noting that courts typically do not require affidavits to show materiality for purposes of Rule 15 and instead rely on representations of counsel).  Although the "moving party's diligence and the timing of the prospective depositions are relevant considerations to be weighed under Rule 15(a)[,]" courts often find that "[w]hen a substantial likelihood exists that the prospective deponents will be unavailable for trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony. Absent a serious lack of due diligence by the moving party, therefore, precluding the taking of depositions under those circumstances is likely to frustrate, not expedite, the administration of criminal justice."  *Drogul*, 1 F.3d at 1556.

The final factor to consider for a Rule 15 deposition is whether the "prospective witness' testimony is necessary to prevent a failure of justice." In doing so, the court may consider "the nature of the charged [crime], the importance of the testimony, and the circumstances" of the witness' unavailability. *United States v. Asane*, No. 5:19-CR-423-FL-1, 2020 WL 413081, at *1-2 (E.D.N.C. Jan. 24, 2020).

    A.  Mr. Siemens is Unavailable to Testify

Due to the severity of his declining health conditions and his inability to travel, Mr. Siemens is properly considered to be unavailable within the meaning of Rule 15, as there is a "substantial likelihood" that he will not be able to testify at trial. *Jefferson*, 594 F. Supp. 2d at

667 (citing *United States v. Drogoul*, 1 F.3d 1546,1553 (11th Cir. 1993)). Specifically, and as stated herein, counsel for Mr. Meggs has been advised that Mr. Siemen's health has deteriorated significantly in such a way that renders long travel unfeasible. (Exhibits B and C.). Courts routinely authorize depositions for witnesses in deteriorating health or with significant travel restrictions caused by health conditions. *See, e.g., Karoly*, No. CRIM.A. 08-592, 2009 WL 1872083; Irwin, No. C1- 05-21, 2005 WL 1656846. Accordingly, Mr. Meggs seeks Mr. Siemens's deposition in advance of trial given the probability that Mr. Siemens will be unavailable to attend.

      B. *Mr. Siemens's Testimony is Material Under Brady*

That Mr. Siemens's testimony is material to Mr. Meggs's defense is quite plainly obvious in that Mr. Siemens possesses the unique ability to testify to the Oath Keepers' longstanding practice of providing security details while working within the confines of the law. Such testimony would undermine the Government's assertion that the Oath Keepers had no lawful purpose for being in Washington, DC; that the Oath Keepers organization is a violent, anti-government organization; and establish the Oath Keepers organization's prior lawful involvement as security detail for Trump Presidential Campaigning events and other similar rallies. *See e.g.*, *Sanford*, 860 F. Supp. 2d at 8 (finding testimony material where it served to impeach testimony of prosecution witnesses). In addition, Mr. Siemens has personal knowledge of the security provided by the Oath Keepers for which Mr. Meggs specifically provided assistance: in Ferguson, Missouri and Louisville, Kentucky.

The Government's theory of the case rests on a claim that the Oath Keepers purpose for being in Washington, DC on January 6, 2021, was to oppose by force the lawful transition of presidential power, a fact which Mr. Siemens's testimony serves to undermine. Mr. Siemens's testimony is material under *Brady*, because his testimony is exculpatory: it will undermine the

7

...

Government's assertion that the defendants in this case acted in a way that would oppose the authority of the federal government.  Mr. Siemens's testimony further serves to establish that the Oath Keepers organization operates within the confines of the law.

    *C.  Allowing Mr. Siemens's Deposition Would Prevent a Failure of Justice*

    Similarly, the taking of Mr. Siemens's deposition will prevent a failure of justice—namely the potential loss of testimony critical to Mr. Meggs's defense.  As explained herein, Mr. Siemens offers critical testimony about the Oath Keepers longstanding practice of serving as hired security detail for rallies similar to the rally held on the morning of January 6, 2021.  Indeed, without such testimony, Mr. Meggs loses access to a witness who can corroborate his participation in providing security at protests in Ferguson, Missouri and Louisville, Kentucky, among other events.

    And although the "moving party's diligence and the timing of the prospective depositions are relevant considerations to be weighed under Rule 15(a)[,]" Courts have ultimately found that "[w]hen a substantial likelihood exists that the prospective deponents will be unavailable for trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony. Absent a serious lack of due diligence by the moving party, therefore, precluding the taking of depositions under those circumstances is likely to frustrate, not expedite, the administration of criminal justice." *Drogul*, 1 F.3d at 1556.

    Moreover, "Rule 15 was designed to facilitate the preservation of testimony which may be needed to guarantee the deposing party a fair trial." *Id.* at 1557. Here, the failure to obtain Mr. Siemens's testimony directly implicates Mr. Meggs's Fifth Amendment rights to due process and against self-incrimination.  *See United States v. Mohamed*, No. 18-CR-603 (ARR), 2020 WL

1545522, at *5 (E.D.N.Y. Apr. 1, 2020) (weighing defendant's Fifth Amendment rights as a factor in whether to permit Rule 15 deposition); *Jefferson*, 594 F. Supp. 2d at 668, fn. 18 ("[T]he better and more persuasive view is to construe Rule 15 so as not to infringe a defendant's Fifth Amendment right in any way."); *United States v. Grossman*, No. S2 03 CR. 1156 (SHS), 2005 WL 486735, at *4 (S.D.N.Y. Mar. 2, 2005) (recognizing that proposed Rule 15 witness could testify in a way that the defendant could not, should the defendant even choose to testify at trial). Mr. Siemens is in a unique position as one of the longest tenured members of the Oath Keepers organization, with close association with co-defendant Rhodes on at least one occasion, who can speak to both the organization's past security detail jobs as well as the lawful reasons for Mr. Meggs and his co-defendants' presence on January 6, 2021 in Washington, D.C.  Further, Mr. Siemens does not stand accused of any crimes relating to his involvement with the Oath Keepers, and therefore he can speak freely about the actions of the Oath Keeepers without any fear of self-incrimination.

      To the extent the government opposes the taking of Mr. Siemens deposition because the trial in this matter is poised to begin, the appropriate remedy for any prejudice to the government is not to preclude the admission of Mr. Siemens testimony for Mr. Meggs's benefit, but to continue the trial so as to allow the deposition to be taken at a time more convenient for the government.  Nor can the government claim that defense counsel had an opportunity to previously propose the taking of Mr. Siemens' deposition – defense counsel did not learn of Mr. Siemens's existence until September 6, 2022, with the filing of Mr. Rhodes's motion to substitute counsel.  *See* Mot. at 6 (Sep. 6, 2022) (ECF No. 290).  Moreover, defense counsel was unaware of the existence of the summary notes taken by Mr. Rhodes's investigator until September 28, 2022, *the same day they were provided to the government.*  The fact of the matter

is that defense counsel has now repeatedly demonstrated to the Court that it has been the government's investigative prerogative to avoid knowledge of the true purpose of the Oath Keepers' presence in Washington, DC on January 6, 2021 – to provide a security detail at the "Stop the Steal" rally that morning.  To whit, the government has far greater access to potential witnesses and digital evidence in this case, should long have known of Mr. Siemen's participation in the Oath Keepers, and yet to date has neither contacted him nor sought his knowledge of the Oath Keepers or its purpose in this investigation.

## **CONCLUSION**

For the foregoing reasons, Mr. Meggs respectfully moves this Court to Order that pursuant to Rule 15 of the Federal Rules of Criminal Procedure the parties may take the deposition of Mr. John L. Siemens so as to preserve his testimony for trial.

[SIGNATURE ON NEXT PAGE]

Dated: October 2, 2022                    Respectfully submitted,

                                                       */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*

11

## CERTIFICATE OF SERVICE

On October 2, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                             */s/ Stanley E. Woodward, Jr.*
                                    Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                    BRAND WOODWARD LAW, LP
                                    1808 Park Road, Northwest
                                    Washington, DC  20010
                                    202-996-7447 (telephone)
                                    202-996-0113 (facsimile)
                                    Stanley@BrandWoodwardLaw.com