IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
|  | ) | Case No. 1:22-cr-00015-APM |
| v. | ) ) | |
| **KELLY MEGGS, et al.** | ) ) ) | |

**DEFENDANT KELLY MEGGS'S MOTION IN LIMINE
TO PRECLUDE USE OF STATEMENT IN OPENING**

Defendant Kelly Meggs, by and through his undersigned counsel, hereby respectfully requests this court preclude the government's use of a certain statement in its opening. Mr. Meggs objects to the admissibility of these communications on the basis that the Government both will not be able to prove that the communications are admissible, as well as to the relevance and admissibility of the evidence pursuant to Rules 401, 403, and 404 of the Federal Rules of Evidence.

I.   **BACKGROUND**

On July 29, 2022, Mr. Meggs filed a motion *in limine* seeking to preclude the admission of communications from November 3, 2020, between Mr. Meggs and his wife, Connie Meggs, on the grounds that they are subject to the marital communications privilege or otherwise . (ECF No. 221). On August 12, 2022, the Government filed an opposition to the motion, arguing that the communication was not subject to the marital communications privilege because Mr. Meggs's son was allegedly included on the relevant communication, or in the alternative that the communications were admissible under the crime-fraud/joint participant exception to the martial communications privilege. (ECF No. 248). On September 6, 2022, the Court entered an Omnibus Order concerning a number of motions *in limine* in which, *inter alia*, it held that: "If

the prosecution can demonstrate to the court that the Meggs's son was on the communication at issue, the court will admit it over objection." (ECF No. 288).

The government has advised that it intends to reference the messages in question in its opening. The Court's Order, however, made clear that the messages would only be admitted, "*if* the prosecution can demonstrate to the Court that the Meggs's son was on the communication at issue." *Id.* (emphasis added). Yet, the government has identified no new evidence to support its assertion that the text messages in question were sent to Mr. Meggs's son. To the contrary, the government again points to a disclosure made on August 12, 2022, before it filed its opposition, before the hearing on Mr. Meggs's motion *in limine*, and before the Court ruled on the same. That disclosure failed to establish that the messages were sent to Mr. Meggs's son and the government has proffered no new evidence to the contrary. At best, the disclosure submits that at the time the "chat" within which the messages were exchanged was extracted from Mr. Meggs's phone, Mr. Meggs's son was a member, or participant, on the chat. Yet the messages in question were sent months prior to their extraction from Mr. Meggs's phone and it is undisputed that members of the chat can leave or join the chat at any time and did in fact do so. The simple fact of the matter is that the government has not proffered, because it cannot prove, that the messages in question were sent to Mr. Meggs's son.

Accordingly, it is incumbent upon the government, per the Court's September 6, 2022, Order, to further proffer to the Court to support, "the joint participation exception to the [marital] communications privilege." (Sep. 6, 2022) (ECF No. 288).

## II. ARGUMENT

Although the Court denied Mr. Meggs's July 29, 2022 (ECF No. 221), Motion in Limine to exclude the admission of certain prejudicial text messages sent to his wife on November 3,

2020, it did so conditionally, requiring the government to submit additional proof of the admissibility of the statements. As the Court wrote in its September 6, 2022, Omnibus Order: "If the prosecution team *can* demonstrate to the court that the Meggs's son was on the communications at issue, the court will admit it over objection. If the communication did not include the Meggs's son, the court will require a further proffer from the government to support the joint participation exception to the [marital] communications privilege." (ECF No. 288). The government has offered no additional evidence, not since the Court's September 6, 2022, Omnibus Order; not since the Court's August 30, 2022, hearing; and not since it filed its opposition to Mr. Meggs's motion on August 12, 2022. Accordingly, the government has not demonstrated to the Court that Mr. Meggs's son was included in the communications in question and the government should be barred from using the same in its opening. Even if it had made such a demonstration, the government has nevertheless failed to proffer evidence sufficient to support a finding that the communication was in furtherance of any crime. Or in the alternative, the statements in question should not be admitted because they are both irrelevant and more prejudicial than probative of any element of any offense with which Mr. Meggs has been charged.

    a. *The Statements Are Subject to the Marital Communications Privilege*

"There are two kinds of marital privilege: (1) testimonial privilege; and (2) the confidential communications privilege. According to the testimonial privilege, the government is precluded from compelling one spouse to testify against his or her spouse in a criminal case." *United States v. Duran*, 884 F. Supp. 537, 540 (D.D.C. 1995) (citing *Trammel v. United States*, 445 U.S. 40, 49-50 (1958)). "The confidential communications privilege bars the admission of: (1) any words or actions which are intended by one spouse to be a communication to the other; (2) when the communications occurred during the time of a valid marriage; and (3) where the

spouse intended for the communication to be confidential." *Id.* Such communications, "enjoy a presumption of confidentiality." *Id. See also* SEC v. Lavin, 111 F.3d 921, 925 (D.C. Cir. 1997) ("The confidential communications privilege may be asserted against the production of evidence when four prerequisites are met: (1) there must have been a communication; (2) there must have been a valid marriage at the time of the communication; (3) the communication must have been made in confidence; and (4) the privilege must not have been waived."). "Federal common law assumes that private communications between spouses are intended to be confidential, and thus privileged. For this reason, the government bears the burden of showing that the communication was not intended to be confidential." *United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005) (internal citations omitted) (citing *Blau v. United States*, 340 U.S. 332, 333 (1951)). As the Court has already noted, the government has yet to meet its burden. Although the government claims the communications in question were also sent to Mr. Meggs's son, the government *has failed to prove as much*. The only evidence cited by the government is a report by its expert noting that at the time the chat was extracted from Mr. Meggs's phone, Mr. Meggs's son was a participant in the chat. But the communications in question were sent months earlier, and it is undisputed that the participants in the "family chat" in fact did come and go from the chat. Accordingly, the communications in question remain inadmissible and the government should be precluded from referencing the same in its opening.

> b. *The Statements are not Subject to the Joint Participation Exception to the Marital Communications Privilege*

Circuits to have recognized the "joint participation exception" to the marital, "confidential communications privilege," have observed that, "where marital communications have to do with the commission of a crime in which *both spouses* are participants, the conversation does not fall within the marital privilege." *United States v. Parker*, 1987 U.S. App.

LEXIS 15758, at *6 (4th Cir. 1987). The government cannot reasonably dispute that neither Mr. Meggs nor Mrs. Meggs are alleged to have engaged in any criminal activity on November 3, 2020. Indeed, the government acknowledges the earliest Mr. Meggs allegedly joined any conspiracy was on November 9, 2020. This is logical insofar as to the extent the government alleges the purpose of any conspiracy joined by Mr. Meggs was to stop the lawful transfer of power from former President Trump to President Biden, the election had not concluded, let alone been called, when the communications in question were sent. Nor is the fact that Mr. and Mrs. Meggs are later alleged to have spent time in the Rotunda of the Capitol building, which is outside the Speaker's Suite, sufficient reason to permit the government to inform the jury of Mr. Meggs's election-night rhetoric.

 Regardless, this Court need not decide whether the joint participation exception to the marital communications privilege applies in this District because the statements in question are far more prejudicial than they are probative.

   c. *Statements are Inadmissible Because They Lack Relevance Under FRE 401, or Are Inadmissible as Evidence of Prior Bad Acts Under FRE 404, or Must Be Excluded Pursuant to FRE 403*

 The Government has consistently stated that the matters at issue in this case relate to an alleged conspiracy that had not begun as of November 3, 2020. *See* Superseding Indictment ¶¶ 1-2 (ECF No. 167) ("*After the Presidential Election*, [Defendants, including Kelly Meggs] conspired. . . to oppose by force the lawful transfer of presidential power.") (emphasis added). Indeed, the earliest acts in furtherance of any conspiracy alleged within the indictment do not occur until November 5, 2020, two days after the proffered communications allegedly occurred. *See id.* at ¶ 18. Further, Counts II through IV explicitly limit the dates relating to those counts, and the dates of transmission for these alleged communications fall outside the date of any alleged wrongdoing. *See id.* at ¶¶ 136, 138, 140.

Under Federal Rule of Evidence 401, evidence is only relevant if it is both probative and material.  FRE 401. Evidence is probative if it "has any tendency to make a fact more or less probable than it would be without the evidence[.]"  FRE 401(a).  Evidence is material if "the fact is of consequence in determining the action."  FRE 401(b).  The Government has provided no evidence to establish that there was a seditious conspiracy prior to November 5, 2021, at the earliest.  As such, evidence relating to events taken prior to the existence of a conspiracy does not have any effect on determining an action to prove the existence of a conspiracy that is not alleged to have existed at the time the communications are alleged to have been sent.  The communications at issue clearly are not material in that they cannot prove that a conspiracy existed or that Mr. Meggs acted in furtherance of a conspiracy that is not alleged to have existed at that time, and therefore the evidence is not relevant and therefore is not admissible.

At most, the communication is evidence of "other crimes, wrongs, or acts" under FRE 404(b).  Under FRE 404(b), evidence of such prior bad actions is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FRE 404(b)(1).  The government has not provided any reason for which they are able to offer the messages that amount to evidence of Mr. Meggs's alleged prior bad acts before the existence of the alleged underlying conspiracy, and therefore they cannot be admitted under FRE 404(b).

Finally, even if the alleged communications are found to be relevant, the Court should exclude them under FRE 403.  Under FRE 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, *confusing the issues*, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *Id.* (emphasis added).  This Court has previously excluded or

limited the use of evidence of actions taken prior to the timeline at issue in a criminal proceeding, despite the relevance of the evidence, on the basis that detailed testimony of actions taken that fall outside the timeframe at issue in the case have a substantial likelihood of confusing the issues for the jury. *See United States v. Libby*, 467 F. Supp. 2d 1, 10 (D.D.C. 2006) (using FRE 403 to exclude evidence on the basis of confusing the issues. The evidence at issue were "documents and information which relate to the defendant's activities occurring outside these clearly critical time periods [as alleged in an indictment for when the Defendant gained information that led to his alleged criminal actions]. Although this Court cannot say with absolute certainty that no other documents or information related to events falling outside these time periods are totally irrelevant, their probative value is diminished. . . [and] there is a 'danger of unfair prejudice, confusion of the issues, or misleading the jury,' in providing the jury details of the defendant's activities falling outside the critical time periods. Specifically, permitting the defendant to testify as to the details of what consumed his time outside the critical time periods discussed above would likely confuse the jury[.]")

Mr. Meggs's statements prior to the existence of any alleged conspiracy offer no value in determining if Mr. Meggs engaged in the criminal conduct as alleged in the indictment. Moreover, the alleged statements are extremely inflammatory and would very likely influence the decision-making of the jury if they were introduced at trial. The potential for prejudice against Mr. Meggs substantially outweighs what minimal relevance the statements may have.

## CONCLUSION

This Court properly conditioned the admission of Mr. Meggs's alleged election-night statements on the government's ability to demonstrate that the statements in question were made to Mr. Meggs's son and thus not properly to any marital communications privilege. For the

forgoing reasons, the Court should bar the government from referencing the statements in its opening or at any other time until the government has met the requisite showing of their admissibility despite the application of the marital confidential communications privilege. Even were the government to make such a demonstration, Mr. Meggs's reiterates that the communications are not relevant to this action, and even if they were relevant, they are far more prejudicial than they are probative.

**[SIGNATURE ON NEXT PAGE]**

Dated: October 2, 2022                          Respectfully submitted,

                                                                                                      */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*

## **CERTIFICATE OF SERVICE**

On October 2, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

            */s/ Stanley E. Woodward, Jr.*
            Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
            BRAND WOODWARD LAW, LP
            1808 Park Road, Northwest
            Washington, DC  20010
            202-996-7447 (telephone)
            202-996-0113 (facsimile)
            Stanley@BrandWoodwardLaw.com