IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | Case No. 1:22-cr-00015-APM |
| ) | |
| **KELLY MEGGS, JESSICA WATKINS,** ) | |
| **STEWART RHODES, KEN** | |
| **HARRELSON AND THOMAS** ) | |
| **CALDWELL** | |
| ) | |
| **Defendants.** | |

## SUPPLEMENT AND RENEWED
## JOINT MOTION TO TRANSFER VENUE

COMES NOW, Defendants, Kelly Meggs, Stewart Rhodes, Jessica Watkins, Ken Harrelson and Thomas Caldwell, jointly, by undersigned counsel, and respectfully submit this Motion and Memorandum of Points and Authorities, as a Renewed Motion to Change Venue, based on new evidence, pursuant to Federal Rule of Criminal Procedure 21(a), for Prejudice, to seek a transfer of venue, and request the *Western District of Virginia* where Mr. Caldwell resides, or in the alternative, the Eastern District, or other courts that the court may suggest, so that they may be tried by an impartial jury as guaranteed by the Fifth and Sixth Amendments to the United States Constitution.

I. **The D.C. jury pool is prejudiced against the Oath Keepers**.

Previously Defendants produced three (3) commissioned surveys, including one commissioned by the Federal Public Defenders, showing the prejudgment bias in the jurisdiction. (ECF 193, filed July 18, 2022, Exhibits A-C). Exhibit A to ECF 193, the Comparative Multi-District Survey in support of the Motion to Transfer Venue, specifically found how the District stands apart from the three comparative jurisdictions, the Eastern District of Virginia, the Eastern District of North Carolina, and the Northern District of Florida in multiple responses, which showed key differences between the DC Community and other Test Areas.  (*Id.* at p. 2).

In the earlier cited studies, DC results showed responses as an outlier relative to the three (3) comparative jurisdictions as the Comparative Multi-District Survey, as set forth in our Renewed Motion for Change of Venue, ECF 339.  The court denied ECF 339, in short, finding it premature because voir dire had not completed.  Defendants had based that motion on the results of the Agreed Juror Questionnaire.  *See Id.*   Defendants argued that those results showed that 51% claim in could be fair.  (*Id.*)

The latent bias is obvious in this jurisdiction where in the same study in which respondents reported that 71 % of DC would find January 6th defendants guilty of crimes, or 71.17% who believe all who entered the U.S. Capitol *planned in advance* to enter the Capitol that day, also felt that they could still be fair, findings that make it clear a fair and impartial jury is not possible.

The Rhodes actual voir dire reflected findings that were consistent with both studies previously cited and the responses on the Jury Questionnaire show more than 51% admit to prejudgment bias and many who lived, worked near the Capitol, or had a concern for their safety on January 6, 2021.

This court brought in 94 people on voir dire before the court could find a panel of 47 people who were arguably eligible, after for cause dismissals primarily for bias, with a handful of those struck for unavailability.  Of the 47 arguably qualified prospective jurors, the court found that they could speak dispassionately on the issues of January 6th, but nevertheless heard testimonials from these subsequently qualified prospective jurors disclosing:

- "vivid memories of that day" and described the school on the hill she worked at near the Capitol and the close friend who died by suicide, who's death she attributed to the events of January 6, nevertheless qualified.

- that it was a tough day, he 'was close to capitol,' 'his kid was in school down the street from capitol,' and he 'worried about people attacking houses.'

- he had 'strong opinions about aspects of j6', was very afraid, people coming from out of town, carrying big weapons, "here on 9/11," 'scared to walk home,' that he 'cried all night, like watching 9/11 on TV,' that so did 'his close friends that worked at Capitol,' that 'he had worked on house floor, and had worked there for years.'

- " "yes" to question 47, that she could not be fair and impartial with the Oath Keepers, but then testified in response to the judge, that she initially thought she could not be fair or impartial because she thought it was about the organization.

- that the person "worked for house for 12 years," 'works as a lobbyist including in the House,' and 'lives a few blocks from capitol," and "spoke with people in the House about that day."

- that she lived a block from the Capitol, and that it was 'very impactful that it happened where she lived.'

- that he "read many articles about the insurrection and has many feelings about the attack" but was found to be able to be fair and impartial.

Permitting these biased persons, among others, in the 47 arguably qualified jurors, helped absorb the Defendants peremptory challenges.  Despite the court's hard work to find neutral and dispassionate jurors who could follow the presumption of innocence,  the burden for many prospective jurors who testified explained that if the defendants could show that they did not do it, they would listen, but under American jurisprudence, as this court knows, the burden is not on the defendants to prove their innocence.   Of the 72 defendants identified on Defendants objection list for bias, five (5) are now on the jury.

Media reports that followed,

> "Perhaps the clearest divide between Mehta and the defense attorneys emerged over the case of a civilian Pentagon employee who described the Oath Keepers as "anti-democracy." The man said he had a close friend who used to work

3

in the House — prior to Jan. 6 — and who had shared personal stories with him of those who lived through the day. He expressed strong views about gun possession and said he would have trouble separating those views if he learned the Oath Keepers carried firearms. But he added that he would view the matter differently if the evidence showed they had left any weapons outside of Washington D.C. The man said he viewed Trump as responsible for the events of Jan. 6, with significant contributions by the Oath Keepers and Proud Boys, but he emphasized that he had friends who are or have been Trump supporters."

**Politico**: "The most high-profile Jan. 6 trial has the most D.C. jury selection process possible."

"Civil Rights Attorney David Henderson and NBC's Ryan Reilly and Ben Collins join Andrea Mitchell amid jury selection in the Oath Keepers seditious conspiracy trial. "It's not jury selection. It's jury de-selection. You're not picking who should serve. You're picking who shouldn't serve," Henderson explains. "Based on what we know already, the Oath Keepers have already lost this trial because they've lost jury selection.""

**MSNBC**: David Henderson: 'The Oath Keepers have already lost this trial because they've lost jury selection'

"The question is whether they could set aside their feelings and be impartial when they hear evidence in this case. We had prospective jurors who talked about trauma they experienced on January 6. I felt like they invaded my house, one man said."

**NPR**: Jury selection is underway in the Jan. 6 riot trial of Oath Keepers members

"The court already had dismissed more than two dozen potential jurors before Tuesday, including a journalist who had covered the events of Jan. 6. and someone else who described that day "one of the single most treasonous acts in the history of this country."
The judge disqualified three additional jurors Tuesday based on concerns about their impartiality. One man recalled the fear and "trauma" that he experienced on Jan. 6. Mehta also disqualified a woman who said she used to work as a House staffer on Capitol Hill and still has many friends who work there.
"I was really afraid for their lives that day," she said.
Phillip Linder, an attorney for Rhodes, urged the judge to disqualify a man who said he has a close family friend who works for a House member and recalled watching livestreamed video of the Capitol attack. The judge called it a "close call" but declined to disqualify the man who said he could set aside what he has heard about the Oath Keepers."

**PBS**: Sedition trial begins for Oath Keepers leader

"One District of Columbia resident was angry at the threat the rioters posed to his two young children, saying, "I felt like they invaded my home."

Another said that the violent scene brought tears to his eyes. Several recalled feeling worried for friends or colleagues who might have been in harm's way."

**Huffington Post**: Oath Keepers' Seditious Conspiracy Trial Kicks Off With Jury Selection

4

"To the extent that defense lawyers — who have repeatedly asserted that a D.C. jury wouldn't be fair — anticipated a cavalcade of Washington residents hostile to their clients on Tuesday, some jurors didn't disappoint.
"There weren't many protests I didn't attend in Washington, D.C. during the Trump administration, inauguration day," the first would-be juror explained when asked to expand upon his affirmative response to a question about whether he had attended any rallies or protests in the past five years. The juror also said that he felt fear for the country as he watched the chaos unfold that day and compared it to the Sept. 11, 2001 terrorist attacks on the World Trade Center in New York and the Pentagon in Washington.
Mehta dismissed him from the jury pool.

"I strongly believe [Jan. 6] was an insurrection led by right-wingers to reverse a free and fair election," another potential juror said, before telling Mehta she did not believe she'd be able to put her personal beliefs aside. She was also dismissed from the jury pool.
"I live in Washington, D.C., and this is my home, and I feel like they invaded my home," another juror said before Mehta dismissed him.

"I would be fair, but it would be difficult," one would-be juror who had attended rallies in support of upholding abortion rights established in Roe v. Wade said when asked if she felt she could be impartial in judging people who may have different political views from her. "I believe some political parties are unfair. I tend to think that they are racist, and I am a Black woman."
Moments later, she made her views even clearer, using the phrase "neo Nazis" to describe people who attend Trump rallies."

**Law and Crime**: ['I Would Be Fair, But It Would Be Difficult': Jury Selection Starts in Oath Keepers Jan. 6 Seditious Conspiracy Trial](#)

### b.     **The Current Jury Panel**

Now that voir dire is complete, we can show that Defendants argued that the initial panel of 151 people shows *over 51% admitting to prejudgment bias*, under oath.  (See Joint Submission by the parties.)  The numbers ended up being consistent with Defendants previous arguments.  The court reached 94 people before finding 47 deemed "qualified."  This is close to the 50% and it should be noted that there were people testifying to feeling personally impacted on 1/6 who were not dismissed for cause; and Defendants can show that the court struck 30 of 47 on Defendants strike list, finding 17 of those who responded affirmatively in the questionnaire to a bias question including Q22, to be "qualified."

The questions 11, 17, 47, 49 that reflect admitted bias under oath:

Q. 11: Is there anything about you that the Court should know that might affect your ability to be a fair and impartial juror in this case?

Q17: Do you have such strong feelings about firearms or the laws concerning firearms that would make it difficult to be a fair and impartial juror in this case?

Q. 47: Have you read, seen, or heard anything about the "Oath Keepers" organization that would affect your ability to be a fair and impartial juror in this case?

Q. 49: Have you read, seen, or heard anything about the defendants-Elmer Stewart Rhodes III, Kelly Meggs, Kenneth Harrelson, Jessica Watkins, or Thomas Caldwell that would affect your ability to be a fair and impartial juror in this case?

and

Q. 22: Did you have a concern for the safety of yourself, a close friend, or family member on January 6, 2021?" (Juror Questionnaire, Q 22)

These responses, without the same granularity of the questions in the Comparative Multi-District Survey, (Ex. A, ECF 193), and not counting Q. 46 "*Have you read, seen, or heard about any allegations regarding the Oath Keepers in this case?*" or Q48, "*Have you read, seen, or heard about any allegations regarding the defendants-Elmer Stewart Rhodes III, Kelly Meggs, Kenneth Harrelson, Jessica Watkins, or Thomas Caldwell-in this case?*" (Juror Questionnaire, Q 48), reflect express bias that will be prejudicial despite best efforts.

And while the court has been strict in its instructions not to pay attention to further news, the likelihood that the well-read population among the jury panel of Washington DC will continue to adhere to this instruction and has not already been deleteriously affected by local media is also highly unlikely.

Defendants incorporate their prior legal argument and statements set forth in ECF 339, and will not restate that herein. Defendants only reiterate their rights to a guarantee of an impartial jury. 'The Supreme Court has stressed repeatedly that the touchstone of the guarantee of an impartial jury is a protection against juror bias.' *United States v. Boney*, 977 F.2d 624, 633 (D.C. Cir. 1992)( the D.C. Circuit remanded the case for an evidentiary hearing where one juror lied

about his felony conviction.) Accordingly, the defendants previously moved that the Court move the case eight miles from D.C. to the U.S. District Court for the Eastern District of Virginia ("EDVA") for the convenience of the government and the court, but now expressly request the *Western District of Virginia* where Mr. Caldwell resides – or in the alternative, the Eastern District, or other courts that the court may suggest in order to ensure a fair trial.

Respectfully submitted,

By Counsel:

/s/ Stanley E. Woodward, Jr.
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, LP
1808 Park Road, Northwest
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

and

/s/ Juli Zsuzsa Haller*
Juli Z. Haller, (DC 466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, Northwest, S. Bldg., Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

Counsel for Kelly Meggs, and *authorized to sign for Jonathan Crisp for Jessica Watkins, Phil Linder for Stewart Rhodes, Brad Geyer for Ken Harrelson and David Fischer for Thomas Caldwell.

### Certificate of Electronic Service

I hereby certify that on October 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

*/s/* Juli Z. Haller
Juli Z. Haller, DC 466921