## PRELIMINARY INSTRUCTIONS

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial.   These remarks are not meant to be a substitute for the detailed instructions that I will give at the end of the trial. But they are intended to give you a sense of what will be going on in the courtroom and your responsibilities as jurors.

Notetaking

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you. That is because I permit jurors to take notes during trial if they wish. Whether or not you take notes is entirely up to you. Many people find that taking notes helps them remember testimony and evidence; others find it distracts them from listening to the witnesses.

You will not be able to take your notebooks with you as you come and go.   You will be able to consult your notebooks during your deliberations.   At all other times, however, the notebooks will remain locked in the courtroom, including during recesses and overnight.   At the end of the trial, after you have delivered your verdict, your notebooks will

be collected, and the pages torn out and destroyed. No one, including me, will ever look at any notes you have taken, so you may feel free to write whatever you wish.

Alternates

You have probably noticed that there are 16 of you sitting in the jury box. Only 12 of you will retire to deliberate in this matter. That means four of you are alternate jurors. We have alternate jurors in the event that a juror is unable to continue his or her service, for whatever reason. Before any of you even entered the courtroom, we randomly selected the alternates' seats. I will not disclose who the alternate jurors are until the end of my final instructions. As any seat might turn out to be an alternate's seat, it is important that each of you think of yourselves as regular jurors during this trial, and that all of you give this case your fullest and most serious attention.

Recognition of Witnesses or Others

At the beginning of the jury selection process, I asked the parties to identify themselves and to announce the names of their possible witnesses. If, at any time during this trial, you suddenly realize that you

recognize or might know any witness, lawyer, someone who is mentioned in the testimony or evidence, or anyone else connected with this case in any way, you should raise your hand immediately and ask to speak with me.

Summary of charges

Now, I will briefly provide you with some additional details about this case.   This is a criminal case that began when the grand jury returned an indictment against the defendants, Mr. Elmer Stewart Rhodes III, Mr. Kelly Meggs, Mr. Kenneth Harrelson, Ms. Jessica Watkins, and Mr. Thomas Caldwell. The indictment is just a formal way of charging a person with a crime in order to bring him or her to trial.

The indictment in this case contains conspiracy charges and other charges.   The indictment alleges that the defendants agreed to oppose by force the lawful transfer of presidential power following the 2020 U.S. Presidential Election, and, in so doing, that the defendants[1] violated three separate conspiracy laws.   The first conspiracy charge is Count One,

---

[1] The defense objects to the highlighted portion.   The government submits that, as the jury will not be receiving the indictment, it is important to summarize the indictment, including the general purpose of the alleged agreement.

seditious conspiracy, which charges that the defendants entered an agreement to try to stop the lawful transfer of power by opposing by force the authority of the Government of the United States, or to use force to prevent, hinder, and delay the execution of any law of the United States. The second conspiracy charge is Count Two, conspiracy to obstruct an official proceeding, which charges that the defendants entered an agreement to obstruct an official proceeding, that is, Congress's session on January 6, 2021, to certify the Electoral College votes. And the third conspiracy charge is Count Four, conspiracy to prevent members of Congress from discharging their duties.

With regard to the other charges: Count Three of the indictment charges all five defendants with obstruction of an official proceeding, meaning Congress's session on January 6 to certify the Electoral College votes. Count Five charges defendants Kelly Meggs, Kenneth Harrelson, and Jessica Watkins with destruction of government property, for the alleged damage to property at the U.S. Capitol on January 6. Count Six charges Jessica Watkins with committing an act to obstruct, impede, or interfere with law enforcement officers lawfully carrying out their official

duties incident to a civil disorder, for allegedly interfering with police officers inside the Capitol on January 6. Finally, Counts Seven, Eight, Nine, and Ten[2] charge defendants Stewart Rhodes, Kelly Meggs, Kenneth Harrelson, and Thomas Caldwell with obstruction of justice for tampering with documents or proceedings. These charges are based on the allegation that these defendants, after January 6, deleted certain content from their cell phones or social media accounts —or, in the case of Stewart Rhodes, encouraged or instructed other people to delete the content—to prevent the grand jury from obtaining that content.

All five defendants have pleaded not guilty to all charges in the indictment.

Now, you should understand clearly that the indictment that I just summarized is not evidence. You must not think of the indictment as any evidence of the guilt of any of the defendants, or draw any conclusion about the guilt of the defendants just because they have been

---

[2] The parties request that, solely for purposes of the jury instructions and verdict sheet, the Court renumber the 18 U.S.C. § 1512(c)(1) count against Caldwell from Count Thirteen to Count Ten, to lessen any possibility of juror confusion with gaps in count numbering.

indicted.

You should not speculate about whether other individuals have been charged with crimes.   Others will have their day in court.[3]   During this trial, the only issue for you to decide is whether the government has proved each of these five particular defendants guilty beyond a reasonable doubt.

Trial Procedures

Now, I will turn to briefly explain some of the procedures we will follow and some of the rules of law that will be important in this case.

As I explain how the trial will proceed, I will refer to the "government" and to the "defense" or the "defendants."   When I mention the "government," I am referring to Ms. Rakoczy, Mr. Nestler, Mr. Manzo, or Ms. Hughes, who are prosecutors with the U.S. Attorney's Office for the District of Columbia.   When I mention the defendants or the defense, I am referring to Mr. Rhodes, Mr. Meggs, Mr. Harrelson, Ms. Watkins, or Mr. Caldwell, or to one or more their attorneys—Mr.

---

[3] The defense objects to this sentence.

Linder, Mr. Bright, Mr. Tarpley, Mr. Woodward, Ms. Haller, Mr. Geyer, Mr. Crisp, or Mr. Fischer--or a combination of some defendants or lawyers.

Both sides have a number of other individuals assisting them with the case, including paralegals, clerks, other lawyers, and, in the case of the government, FBI agents. Those individuals will sometimes be sitting at the table with the other lawyers and sometimes in the benches behind them. To make the presentation of evidence more efficient for you, these other individuals—and sometimes even one of the prosecutors or defense lawyers—will be doing work related to this case outside of the courtroom. Do not make any assumptions or hold against a party the fact that you sometimes see them or members of their team here in the courtroom and sometimes do not.

After I finish these preliminary instructions, as the first step in this trial, the government and the defendants will have an opportunity to make opening statements. The defendants may make an opening statement immediately after the government's opening statement or they may wait until the beginning of the defendants' case, or they may choose not to

make an opening statement at all. You should understand that the opening statements are not evidence. They are only intended to help you understand the evidence that the lawyers expect will be introduced.

After the opening statement or statements, the government will put on what is called its case-in-chief. This means that the government will call witnesses and ask them questions. This is called direct examination. When the government is finished, each defendant's lawyers may ask questions. This is called cross-examination. When the defense is finished, the government may have brief re-direct examination. After the government presents its evidence, the defendants may present evidence, but they are not required to do so.

The law does not require a defendant to prove his or her innocence or to produce any evidence. If, however, the defense does put on evidence, the defendant's lawyers will call witnesses to the stand and ask questions on direct examination; government counsel will cross-examine; the other defense counsel will cross-examine; and that defendant's lawyers may have re-direct examination. When each defendant is finished, the

government may offer a rebuttal case, which would operate along the same lines as its case-in-chief.

At the end of all the evidence, I will instruct you once more on the rules of law that you are to apply in your deliberations when you retire to consider your verdict in this case. Then each side will have a chance to present closing arguments in support of its case. The statements of the lawyers in their closing arguments, just as in their questions and in their opening statements, are not evidence in this case. They are intended only to help you understand the evidence and what each side claims the evidence shows. Finally, at the end of the closing arguments, I will have a few additional instructions for you before you begin your deliberations.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury. My responsibility is to conduct this trial in an orderly, fair, and efficient manner, to rule on legal questions that come up in the course of the trial, and to instruct you about the law that applies to this case. It is your sworn duty as jurors to accept and apply the law as I state it to you.

Your responsibility as jurors is to determine the facts in the case. You—and only you—are the judges of the facts. You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses. You must consider and weigh the testimony of all witnesses who appear before you.  You alone must decide the extent to which you believe any witness.

During this trial, I may rule on motions and objections by the lawyers, make comments to lawyers, question the witnesses, and instruct you on the law.   You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts.   If you think that somehow I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it.   The verdict in this case is your sole and exclusive responsibility.

The lawyers in the case may object when the other side asks a question, makes an argument, or offers evidence that the objecting lawyer believes is not properly admissible. I will respond by saying either "sustained" or "overruled."

If I sustain an objection to a question asked by a lawyer, the question must be withdrawn, and you must not guess or speculate what the answer to the question would have been.   If I overrule an objection, the question may stand, and the witness may answer it.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he or she is proven guilty beyond a reasonable doubt. The burden is on the government to prove the defendant guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial.  If you find that the government has proven beyond a reasonable doubt every element of the particular offense with which a defendant is charged, it is your duty to find him or her guilty of that offense.   On the other hand, if you find that the government has failed to prove any element of a particular offense beyond a reasonable doubt, you must find the defendant not guilty of that offense.

You are not permitted to discuss this case with anyone until this case is submitted to you for your decision at the end of my final instructions. This means that, until the case is submitted to you, you may not talk about

it even with your fellow jurors. This is because we don't want you making decisions until you've heard all the evidence and the instructions of law. In addition, you may not talk about the case with anyone else. It should go without saying that you also may not write about the case electronically through any blog, posting, or other communication, including "social networking" sites such as Facebook or Twitter until you have delivered your verdict and the case is over. This is because you must decide the case based on what happens here in the courtroom, not on what someone may or may not tell you outside the courtroom.

You, of course, may tell family and friends that you are serving as a juror, and you may even tell them you are serving as a juror in a criminal case. But I ask you to say nothing more than that. When the case is over, you may discuss any part of it with anyone you wish, but until then, you may not do so.

Although it is a natural human tendency to talk with people with whom you may come into contact, you must not talk to any of the parties, their attorneys, or any witnesses in this case during the time you serve on this jury. If you encounter anyone connected with the case outside the

12

courtroom, you should avoid having any conversation with them, overhearing their conversation, or having any contact with them at all. For example, if you find yourself in a courthouse corridor, elevator, or any other location where the case is being discussed by attorneys, parties, witnesses, or anyone else, you should immediately leave the area to avoid hearing such discussions.   If you do overhear a discussion about the case, you should report that to me as soon as you can.   Finally, if you see any of the attorneys or witnesses involved in the case and they turn and walk away from you, they are not being rude; they are merely following the same instruction that I gave to them.

It is very unlikely, but if someone tries to talk to you about the case, you should refuse to do so and immediately let me know by telling the courtroom deputy or the marshal.   Don't tell your fellow jurors; just let me know, and I'll bring you in to discuss it.

Because you must decide this case based only on what occurs in the courtroom, you may not conduct any independent investigation of the law or the facts in the case.   Nor should you read or view any news stories about this case that you come across.   This used to only mean that you

could not conduct any research in books or newspapers, or read news articles or view stories on television, or visit the scene of the alleged offense.   In this electronic age, it also extends to the internet.   It means you cannot research or investigate any issue on any website, ask any questions of anyone via email, text or social media, or otherwise communicate about the case.   It also means that you must avoid reading or viewing any stories online about this case.   That includes tweets or other social media postings about the case.   To help you avoid seeing any news about this case, you should change the settings for push notifications on your cell phone, as well as your news subscription alerts and RSS feeds or Twitter feeds.   If you happen to get a push notification about the case, you should not review the linked story.

I want to explain a bit further why there is a ban on internet communications, research, and review of new stories concerning the case. Unfortunately, courts around the country have occasionally experienced problems with jurors ignoring this rule, sometimes resulting in costly retrials.   Generally speaking, these jurors have not sought to corrupt the process, rather they have been seeking additional information to aid them

in what is undoubtedly a heavy and solemn responsibility.   Nonetheless, there are sound reasons for this rule.

In the first place, obviously, not everything one sees on line is true. This includes not only persons responding to whatever postings you may make about the case, but also can involve established websites. For example, a mapping site might not reflect the way a location appeared at the times that are at issue in the case.   Furthermore, even items that are technically true can change their meaning and significance based upon context.

Both sides are entitled to have the chance to not only dispute or rebut evidence presented by the other side, but also to argue to you how that evidence should be considered within the factual and legal confines of the case. Any secret communications, research, or review of news stories by a juror robs them of those opportunities and can distort the process, sometimes with negative results. It is for those reasons, that I instruct you that you should not use the internet to communicate about the case, do any research about the case, or review any news stories about the case, including any social media postings.   If you do happen to come across a

news story or social media posting, whether in print, on television, or online, and you happen to view or read some of it in a "substantial way," please do not share that fact with your fellow jurors.   Instead, please alert the courtroom deputy about it, so that I can discuss it with you outside the presence of your fellow jurors.   What do I mean by "substantial way"? If, for example, you inadvertently happen upon a headline about this case, but read no further, I do not consider that "substantial" and you do not need to report it to the courtroom deputy.

Finally, we have two terrific court reporters here—one in the morning and one in the afternoon—taking down testimony, but you will not have a transcript with you during deliberations.   You must rely on your memory and, if you take them, your notes as an aid to that memory. So, I ask you to pay close attention, and we will begin with the opening statement by the government.