IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> KELLY MEGGS, ) <br> ) <br> DEFENDANT. ) | Criminal No. 1:22-cr-00015-APM |
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> ELMER STEWART RHODES III, ) <br> ) <br> DEFENDANT. ) | |

**DEFENDANTS KELLY MEGGS AND ELMER STEWART RHODES III JOINT OPPOSITION TO GOVERNMENT'S RESTITUTION MEMORANDUM**

Defendants Kelly Meggs and Elmer Stewart Rhodes III, through their respective undersigned counsel, file this response to the government's brief arguing, *inter alia*, that Messrs. Meggs and Mr. Rhodes can be made to pay a larger restitution amount for what the government claims is a "leadership role" taken on by the two men.

At the outset, the Court has already concluded that Messrs. Meggs and Rhodes are not capable of paying financial restitution for the crimes with which they have been convicted. *See* Meggs Judgment, at 8 (June 5, 2023) (ECF 626); Meggs Statement of Reasons, at 1 (June 5, 2023) (ECF No. 627). *See* Rhodes Judgment, at 8 (June 5, 2023) (ECF 624); Rhodes Statement of Reasons, at 1 (June 5, 2023) (ECF 625). Nevertheless, the government now – after previously seeking the standard felony conviction restitution amount of $2,000.00– asks this Court to order Mr. Meggs pay $28,000.00 in restitution based on, "the number of individuals . . . ordered or led

into the riot and Capitol." Brief, at 2-3 (July 7, 2023) (ECF No. 654). The government asks this Court to order Mr. Rhodes to pay $42,000 in restitution on the same justification. *Id.* Restitution, the government claims, is necessary because Messrs. Meggs and Rhodes are responsible for the tragic events of January 6, 2021. But to simply say the thing, does not make it true. No one participant is (or two participants are) responsible for the entirety of the events of that day, and certainly the record in this matter does not reflect a larger amount of damage or any violent behavior that can be attributed to Messrs. Meggs or Mr. Rhodes. Indeed, under the government's theory of liability – or eligibility for restitution – in this case, were former President Trump convicted of offenses related to the events of January 6, 2021, with which he has now been charged, he would be responsible for the entirety of the damages caused by the riotous mob at the Capitol that day.

Under both the Victim Witness Protection Act, 18 U.S.C. § 3663 ("VWPA") and the Mandatory Victim Protection Act, 18 U.S.C. § 3663A ("MVPA"), the government must prove by a preponderance of evidence not simply the amount of loss suffered by a victim, *see* Brief, at 6, but also that the victim's loss was, "a result of the [defendant's] offense." *See United States v. Monzel*, 641 F.3d 528, 539-40 (D.C. Cir. 2011) (citing 18 U.S.C. § 3664(e)). Even if the government can prove that either defendants' action(s) was/were a proximate cause(s) of the harm warranting the restitution, the restitution amount must be, "limited to the actual, provable loss suffered by the victim *and caused by the offense conduct*." *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019) (emphasis added) (quoting *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012)).

While the Court may impose joint and several liability for restitution, any designation of the same for one defendant out of multiple requires a showing of proximate causation that justify

the payment of actions that a defendant did not otherwise engage in. *See Monzel*, 641 F.3d at 539-40. The government submits that due to the number of participants in the events of January 6, 2021 and the cases prosecuting same, the exact calculation of which individuals are specifically responsible for what specific amount of damage caused is likely impossible to determine. Brief, at 6-7. The *Monzel* Court noted a significant concern for similar situations that the government now seeks to downplay: "Proximate cause ensures some direct relation between the injury asserted and the injurious conduct alleged . . . [w]ithout the limitation such a link provides, liability would attach to all sorts of injuries no matter how remote or tenuous the cause connection." *Monzel*, 641 F.3d at 536-37 (internal quotation marks omitted) (quoting *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010)). Put more simply, to justify a greater amount of restitution from one or two specific individuals for actions attributable to many independent defendants should have some clear, demonstrable causal link that justifies such an action; the government's proffered links for Mr. Meggs and Mr. Rhodes are tenuous at best.

"[W]here it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court . . . should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline v. United States*, 572 U.S. 434, 458 (2014).

The VWPA requires a judge to consider when assessing a potential restitution payment, "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i)(II). While the MVRA may not require that the Court consider the financial factors of a defendant, full restoration must still be based upon a finding that, "the victims' losses are directly or proximately caused by the scheme and not just tangentially linked

3

to it[.]" *United States v. Bogart*, 490 F. Supp. 2d 885, 905-06 (S.D. Ohio 2007) (quoting *United States v. Dickerson*, 370 F.3d 1330, 1342-43 (11th Cir. 2004)).  Further, under the MVRA, courts have considered defendant's financial situation and at the very least assigned a payment schedule allowing for only payment of mandatory restitution (i.e., reducing or waiving other fines) and staggered payments of restitution owed under MVRA to lessen the economic impact the restitution would have on low-income defendants.  *See generally United States v. Duncan*, 578 Fed. Appx. 183 (4th Cir. 2014). Further still, the MVRA must be applied in accordance with 18 U.S.C. § 3664. See 18 U.S. Code § 3663A(d). A relevant portion of 18 U.S.C. § 3664 statement states that, "[a] restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(3)(B).

    1.    *The Government Has Not Proven Mr. Meggs or Mr. Rhodes Actually Caused or Proximately Caused Any Harm.*

A review of the record reveals that the government has not demonstrated any actual or proximate cause linking Mr. Meggs's or Mr. Rhodes's respective actions to the restitution now sought by the government.  The record does not reflect the existence of a conspiracy from November 2020 through January 6, 2021, and the government's official theory of their case is that they only needed to prove Mr. Meggs, Mr. Rhodes and other co-defendants entered into an agreement moments before they entered the Capitol Building and did not prove the existence of a conspiracy prior to the moment of entry into the Capitol Building. Tr. at 9911:8-11 (Nov. 18, 2022).  ("The defendants are not charged with entering into an agreement ahead of time, ahead of January 6th, to storm the United States Capitol.  That is not the allegation in this case.").  The

4

government's main proffered evidence for supporting a mandatory payment of restitution is evidence of actions taken prior to the existence of any conspiracy, and does not provide any context as to how such evidence proves any events on January 6, 2021 were the foreseeable results of these pre-January 6, 2021 actions.  Brief, at 18, 20-22.

The Supreme Court in *Paroline* noted that restitution must be based on a defendant's actual causation as well as proximate causation.  The majority for example notes, "[] to say one event proximately caused another is a way of making . . . [the] separate but related assertion[] [that] the former event caused the latter. This is known as actual cause or cause in fact." *Paroline*, 572 U.S. at 444.  *See also* 4 F. Harper, F. James, & O. Gray, Torts §20.2, p. 100 (3d ed. 2007) (quoted by *Paroline* Majority for the proposition that, "[t]he concept of actual cause is not a metaphysical one but an ordinary, matter-of-fact inquiry into the existence . . . of a causal relation as laypeople would view it.").  The government's brief is noteworthy in that it fails to mention the requirement of actual cause, and in that it fails to show how the record reflects any harm that either Mr. Meggs or Mr. Rhodes actually caused.  Chief Justice Roberts's dissent in *Paroline* demonstrates more clearly the concern of awarding restitution damages that well exceed those actually caused by a particular defendant, "[w]e have interpreted virtually identical language, in the predecessor statute to section 3664, to require restitution to be tied to the loss caused by the offense of conviction. [] That is, restitution may not be imposed for losses caused by any other crime or any other defendant." *Paroline*, 572 U.S. at 465-66 (Roberts, C.J., dissenting) (internal quotation and citation omitted) (quoting *Hughey v. United States*, 495 U. S. 411, 418 (1990)).  Chief Justice Roberts proceeds to note that 18 U.S.C. § 3664(e) makes it the government's burden to prove the amount of restitution sustained, "as a result of *the* offense— that is, [the specific defendant's] offense." *Paroline*, 572 U.S. at 466 (Roberts, C.J., dissenting)

(emphasis in original) (internal quotation omitted).  Chief Justice Roberts then notes that the *Paroline* majority itself acknowledged the impossibility of proving but-for causation, and notes that even if applying a "legal fiction" of aggregate causation of the many to establish actual causation of the one, it is not, "sufficient to award restitution under the statute, which requires a further determination of the amount that [defendant] must pay. He must pay 'the [full amount] of the victim's losses,' yes, but 'as determined by' section 3664—that is, the [full amount of the losses *he* caused.] The Government has the burden to establish that amount, and no one has suggested a plausible means for the Government to carry that burden." *Id.* at 467 (Roberts, C.J., dissenting) (bracketed language and emphasis in original).

When considered in the context of this case, the government seeks to merely glance over their burden of establishing that Mr. Meggs or Mr. Rhodes caused in-fact any damage.  Rather, the government presents many theories as to why Mr. Meggs and Mr. Rhodes are the proximate cause of any damage and injury sustained on January 6, 2021, without even attempting to meet the first part of the test, that either's actions caused the damage.  The government instead points to Judge Kollar-Kotelly's oft-cited analysis in *United States v. Rivera*, 21-cr-60 (CKK) (ECF No. 62), which has been used to imbue guilt to defendants who did not engage in disruptive, damaging, or violent conduct on the basis that their mere unlawful presence at the Capitol during the events of January 6 aided and abetted those who actually engaged in the actual disruptive, damaging, or violent conduct.  *See* Brief, p. 12.  However, Judge Kollar-Kotelly herself notes that her ruling explicitly did not apply to actual causation, because the statute she was interpreting did not require the proof of but-for causation.  *United States v. Rivera*, 21-cr-60 (CKK) dkt. 62 at 13-14 ("Defendant's argument would have the Court add an additional requirement to [18 U.S.C. § 1752(a)(2)]'s causation clause, mandating that a defendant be the

6

but for cause of a disruption."). This puts Judge Kollar-Kotelly's undeniably powerful analysis of the events of January 6 at odds with the government's attempted use here: both restitution statutes require the proof of *both* actual and proximate causation. *See* 18 U.S.C. § 3663(a)(2) (defining "victim" for purposes of VWPA as one who is "*directly* and proximately harmed as a result of the commission of an offense") (emphasis added). *See also* 18 U.S.C. § 3663A(a)(2) (MVRA using the same language). Yet, they seek to use analysis that explicitly did not consider actual causation to prove actual causation in this case.

It must also be noted that the government has not proven *any* property damage caused by Mr. Meggs, Mr. Rhodes, or their co-defendants. Mr. Rhodes was not charged with destruction of government property, and while Mr. Meggs and two of his co-defendants were charged with destruction of government, all three were found not guilty of that count. *See generally* Verdict Form, Nov. 29, 2022 (ECF No. 410). As such, the government has clearly not demonstrated in any capacity that Mr. Meggs, Mr. Rhodes, or anyone that those two defendants are alleged to have recruited or led on January 6, 2021 caused any damage to the Capitol in any capacity, and such damage is what the government primarily bases their restitution calculation upon.

   2.   *The Government Has Not Proven Mr. Meggs's or Mr. Rhodes's Respective Culpability*

Neither Mr. Meggs nor Mr. Rhodes should be assessed a significantly greater fine on the basis of being, "the two leaders of the charged conspiracies[.]" Brief, at 22. The suggestion that either defendant engaged in any leadership activities prior to or during the events of January 6, 2021 is unsupported by the record, as the record suffers from a severe death of any evidence to establish any leadership activity taken by Mr. Meggs or Mr. Rhodes. Specifically, the government alleges that Mr. Meggs coordinated the travel of multiple Florida members of the Oath Keepers to the Washington, DC area, directed at least eight individuals into the Capitol on

7

January 6, 2021, and provided those eight individuals with specific instructions to hinder the duties of Capitol Police Officers taken to protect the Capitol. Brief at 2, 20-22. To prove this, the government cites evidence showing that Mr. Meggs expressed a hope that some group would end up close to (but not inside of) the Capitol, and that Mr. Meggs was with a crowd near (but not inside of) the Capitol the day of January 6, 2021; these messages were seemingly exchanged prior to anyone entering the Capitol grounds on January 6, 2021. Brief, at 21 (citing Gov. Ex. 6860 (Msg. 1.S.656.9990) ("[I]t's gonna be a WILD time in DC we gotta get the crowd going during the day. I think we get everyone up good and close to the Capitol bldg so they can here is inside."); *id.* (Msg. 1.S.656.10107) ("We need to make those senators very uncomfortable with all of us being a few hundred feet away. Our peaceful protests need to have a little more teeth. They aren't listening.")). Then without proffering evidence, they say Mr. Meggs led thirteen individuals into the Captiol. For Mr. Rhodes, the government claims he, "conspired with and ordered at least twenty individuals into the building through his deputies and Signal group chats," and gave a nonexistent "green light" to these individuals to enter the Capitol. Brief, at 2, 21. However, the evidence adduced at trial demonstrated little else other than that Mr. Rhodes spent most of January 6, 2021 in a separate area from his co-defendants, with little to no contact with anyone inside the Capitol, and never entered the Capitol building itself.

Further still, the Supreme Court in *Paroline* mentions a hesitancy to award the exact type of restitution sought by the government here, where no statutory justification exists but the movant seeks the Court to imply a broad right of recovery from one alleged perpetrator: "The . . . suggested approach would amount to holding each possessor of her images *liable for the conduct of thousands of other independently acting possessors and distributors, with no legal or practical avenue for seeking contribution.*" *Paroline*, 572 U.S. at 455 (emphasis added). The *Paroline*

Court even notes that such an approach, ". . . is so severe it might raise questions under the Excessive Fines Clause of the Eight Amendment." *Id.*  The government seeks to downplay its troublesome pursuit of an action which the Supreme Court explicitly warned against by arguing that the only concern raised in *Paroline* was punishing a defendant for the actions of, "geographically and temporally distant offenders[,]" and that no such concern exists, because "[t]he January 6 defendants are criminal actors who were not temporally or physically remote from each other, but instead acted in concert as a mob to cause disruption, which reasonably foreseeably led to harm and damage." Brief at 13-14 (emphasis in original) (quoting *Paroline*, 572 U.S. at 454-55).  However, *Paroline* was not solely concerned about the temporal and geographical distance of co-defendants, noting, "Congress gave no indication that it intended its statute to be applied in the expansive manner . . . contrary to the bedrock principle that restitution should reflect the consequences of the defendant's own conduct [and] not the conduct of thousands of geographically and temporally distant offenders *acting independently, and with whom the defendant had no contact*." *Paroline*, 572 U.S. at 454-55 (emphasis added) (internal citation omitted) (citing *Hughey v. United States*, 495 U. S. 411, 416 (1990).  The government has done basically nothing to prove that Mr. Meggs and Mr. Rhodes, nor the people they allegedly "brought" and "led" into the Capitol on January 6, 2021 were the cause of any of the damage or violence for which the government now seeks restitution.  Rather, the government says that because Mr. Meggs and Mr. Rhodes were both present at the Capitol on January 6, 2021 at the same time as other independent individuals, with whom neither man had any contact with, as well as other individuals they allegedly recruited who the government has not proved caused any damage themselves, they are culpable for a larger amount of damages that people entirely unrelated to them caused.  *See* Brief at 14, 20-21.  This is, taken in full, the exact type of

situation that the *Paroline* Court warned about. As such, this Court should deny the government's claim that Mr. Meggs or Mr. Rhodes should be required to pay more restitution than other defendants on the sole basis of what the government alleges to be a leadership and recruitment role that is not reflected in the record.

> 3. *The Government Asks the Court to Impose a Punishment That Exceeds the Findings of the Jury, Which Implicates Mr. Meggs's and Mr. Rhodes's Sixth Amendment Rights*

Justice Gorsuch has recently addressed the explicit constitutional concern that arises when the Court assesses restitution damages that exceed what a jury found at trial. *United States v. Hester*, 139 S. Ct. 509 (Jan. 7, 2019) (Slip Op. No. 17–9082), *denying cert.*, 708 Fed. Appx. 441 (9th Cir. Cal., Jan. 4, 2018). In his dissent, which Justice Sotomayor joined, Justice Gorsuch notes that the issue of a Court awarding restitution on the finding of additional facts and without the input of a jury directly implicates the rights guaranteed by the Sixth Amendment. *See Hester*, 139 S. Ct. At 509-10 (Gorsuch, J., dissenting). Justice Gorsuch specifically noted a difficult in rectifying the calculation of post-judgment restitution awards on facts that go beyond the jury's findings with the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), which established "statutory maximum" sentences that must be based only on facts that a jury found or that a defendant admitted to. *See Hester*, 139 S. Ct. At 510 (Gorsuch, J., dissenting) ("[T]he statutory maximum for restitution is usually *zero*, because a court can't award *any* restitution without finding additional facts about the victim's loss. And just as a jury must find any facts necessary to authorize a steeper prison sentence or fine, it would seem to follow that a jury must find any facts necessary to support a (nonzero) restitution order." (emphasis in original)). Justice Gorsuch finally notes a hesitancy to hold that restitution is a purely civil remedy that would fall outside of the Sixth Amendment, because, "[f]ederal statutes. . . describe restitution as a 'penalty' imposed on the [criminal] defendant as part of his criminal sentence, as

do our cases." *Id.* at 511 (Gorsuch, J., dissenting) (citing 18 U. S. C. §§3663(a)(1)(A), 3663A(a)(1), 3572(d)(1))) (citing *Paroline*, 572 U. S. 434, 456 (2014); *Pasquantino v. United States*, 544 U. S. 349, 365 (2005)). On the basis of the Sixth Amendment concerns that undoubtedly arise when assessing restitution damages, this Court should refuse to assess either Mr. Meggs or Mr. Rhodes with any restitution damages.

   4. *The Court Has Already Concluded that Mr. Meggs and Mr. Rhodes are Incapable of Paying any Restitution, and Both the VMPA and MVRA Take This Into Account*

As stated herein, this Court has already acknowledged that both Mr. Meggs and Mr. Rhodes are subject to dire financial situation that likely makes both unable to pay fines related to their charges. *See* Meggs Judgment, at 8 (June 5, 2023) (ECF No. 626) ("The court determined that defendant does not have the ability to pay interest and it is ordered that: the interest requirement is waived for the [] restitution."). *See also* Meggs Statement of Reasons, at 1 (June 5, 2023) (ECF 627) ("Fine waived or below the guidance range because of inability to pay."). *See* Rhodes Judgment, at 8 (June 5, 2023) (ECF No. 624) ("The court determined that defendant does not have the ability to pay interest and it is ordered that: the interest requirement is waived for the [] restitution."). *See also* Rhodes Statement of Reasons, at 1 (June 5, 2023) (ECF 625) ("Fine waived or below the guidance range because of inability to pay."). In considering Mr. Meggs's and Mr. Rhodes's respective financial situations as required by the VWPA, this Court should not order Mr. Meggs and Mr. Rhodes to pay any restitution. While it is true that the MVRA does not have the same section requiring the Court to consider a defendant's financial situation when ordering a restitution payment, courts have considered defendants' financial situation and taken efforts to lessen the financial burden on a defendant where possible. *See generally United States v. Duncan*, 578 Fed. Appx. 183 (4th Cir. 2014) (issuing a staggered payment schedule of restitution payments, and waiving other fines in consideration of

defendant's financial situation). Further, the $2000 restitution amount likely does not reflect only the MVRA, meaning that this Court can find that the required mandatory restitution payment is less than $2000. Courts have noted that the MVRA requires a showing that, "the victims' losses are directly or proximately caused by the scheme and not just tangentially linked to it[.]" *United States v. Bogart*, 490 F. Supp. 2d 885, 905-06 (S.D. Ohio 2007) (quoting *United States v. Dickerson*, 370 F.3d 1330, 1342-43 (11th Cir. 2004)).

Similarly, the MVRA must be applied in accordance with 18 U.S.C. § 3664. *See* 18 U.S. Code § 3663A(d). A relevant portion of 18 U.S.C. § 3664 statement states that, "[a] restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(3)(B). Regardless of whether this Court finds any restitution to be mandatory, Mr. Meggs and Mr. Rhodes both clearly fall into the category anticipated in § 3664(f)(3)(B) and thus any mandatory restitution ordered should be nominal payments reflecting both men's financial situations as already reflected in the record.

## CONCLUSION

For the reasons contained herein, Mr. Meggs and Mr. Rhodes respectfully ask this Court to order both defendants to pay no more than the standard $2000 restitution fee applied to all felons convicted in relation to January 6, 2021. Further, Mr. Meggs and Mr. Rhodes respectfully asks this Court to consider both men's respective financial situations, which likely preclude the payment of any restitution fees, and order no more than a nominal payment of any restitution fee they may owe.

**[SIGNATURE ON NEXT PAGE]**

Dated: August 2, 2023

Respectfully Submitted,

      */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest
Suite 350
Washington, District of Columbia  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*

      */s/ Edward L. Tarpley, Jr.*
Edward L. Tarpley, Jr. (D.C. Bar No. LA0014)
(LA. Bar No. 12657)
819 Johnson Street
Alexandria, Louisiana  71301
(318) 487-1460 (telephone)
(318) 487-1462 (facsimile)
edwardtarpley@att.net

*Counsel for Defendant Elmer Stewart Rhodes III*

## Certificate of Electronic Service

I hereby certify that on August 2, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest
Suite 300
Washington, District of Columbia  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Kelly Meggs*