1          **UNITED STATES DISTRICT COURT**
           **FOR THE DISTRICT OF COLUMBIA**
2

    UNITED STATES OF AMERICA,        )  Criminal Action
3                                     )  No. 1:22-cr-00015-APM
                    Plaintiff,        )
4                                     )  <u>**Jury Selection - Day 3**</u>
    vs.                               )  (afternoon session)
5                                     )
    ELMER STEWART RHODES III,         )
6   et al.,                           )  Washington, D.C.
                                      )  **September 29, 2022**
7                   Defendants.       )  Time:  2:50 p.m.
    _____

8

       **Transcript of <u>Jury Selection - Day 3</u>** (afternoon session)
9                         **Held Before**
                **The Honorable Amit P. Mehta**
10               **United States District Judge**

11   _____

               A P P E A R A N C E S
12

    For the Government:        **Kathryn L. Rakoczy**
13                             **Troy A. Edwards, Jr.**
                               **Jeffrey S. Nestler**
14                             UNITED STATES ATTORNEY'S OFFICE
                               FOR THE DISTRICT OF COLUMBIA
15                             601 D Street, Northwest
                               Washington, D.C. 20579
16
                               **Alexandra S. Hughes**
17                             **Louis J. Manzo**
                               U.S. DEPARTMENT OF JUSTICE
18                             950 Pennsylvania Avenue, Northwest
                               Washington, D.C. 20530
19

    For the Defendant Elmer Stewart Rhodes III:
20                             **Phillip A. Linder**
                               **James L. Bright**
21                             **Edward L. Tarpley, Jr.**
                               BARRETT BRIGHT LASSITER LINDER
22                             3300 Oak Lawn Avenue, Suite 700
                               Dallas, Texas 75219
23
                               **David R. Olivas**
24                             OLIVAS LAW PLLC
                               3300 Oak Lawn Avenue
25                             Dallas, Texas 75219

```
 1     For the Defendant Kelly Meggs:
                            Stanley E. Woodward, Jr.
 2                          BRAND WOODWARD LAW
                            1808 Park Road, Northwest
 3                          Washington, D.C. 20010

 4                          Juli Z. Haller
                            LAW OFFICES OF JULIA HALLER
 5                          601 Pennsylvania Avenue, Northwest
                            Washington, D.C. 20036
 6
       For the Defendant Kenneth Harrelson:
 7                          Bradford L. Geyer
                            FORMERFEDSGROUP.COM LCC
 8                          141 I Route 130 South, Suite 303
                            Cinnaminson, New Jersey 08077
 9
       For the Defendant Jessica Watkins:
10                          Jonathan W. Crisp
                            CRISP AND ASSOCIATES, LLC
11                          4031 North Front Street
                            Harrisburg, Pennsylvania 17110
12
       For the Defendant Thomas Caldwell:
13                          David W. Fischer, Sr.
                            FISCHER & PUTZI, P.A.
14                          7310 Governor Ritchie Highway
                            Glen Burnie, Maryland 21061-3065
15     _____

16     Stenographic Official Court Reporter:
                            Nancy J. Meyer
17                          Registered Diplomate Reporter
                            Certified Realtime Reporter
18                          333 Constitution Avenue, Northwest
                            Washington, D.C. 20001
19                          202-354-3118

20

21

22

23

24

25
```

968

1                    P R O C E E D I N G S

2              (REPORTER'S NOTE:  The morning session of the trial

3      was reported by William P. Zaremba who prepared said

4      transcript.)

5              THE COURT:  Okay, everyone.

6         Mr. Woodward, you are standing.

7              MR. WOODWARD:  Yes, sir.  May we be heard?

8              THE COURTROOM DEPUTY:  Please come to order.

9              THE COURT:  Sure.

10             MR. WOODWARD:  Your Honor, the defense would like to

11     renew one objection and raise another objection to two jurors

12     for cause.  The one we'd like to renew is with respect to Juror

13     No. 1591.  That is line 45 on the juror list.  This was a

14     principal of a local elementary school.

15        Your Honor --

16             THE COURT:  What's the number?  This is -- yeah.

17             MR. WOODWARD:  This is Juror 1591.  This is line 45.

18             THE COURT:  Yeah.  This was the juror that I sort of

19     put to the side and said given her obligations I would consider

20     for-cause strike due to, you know, her job and the impact it

21     would have on the school.  So I'm prepared to do that given the

22     number of qualified people we have.

23             MR. NESTLER:  We don't believe that's warranted, Your

24     Honor, but we understand Your Honor's position, and we

25     understand why defense wants to have her struck for the wrong

1    reasons.  We believe that if the defense doesn't want her

2    sitting on the jury, they can use a peremptory strike.

3          We don't believe that it's warranted.  She indicated

4    that she has people who can back her up at the school if she is

5    seated, and she was willing and quite happy to do her civic

6    duty here, as she pointed out.  As a D.C. resident, she doesn't

7    have that many opportunities to do civic duties, and she wanted

8    to do it.

9          MR. WOODWARD:  With respect to Mr. Nestler, I know

10   he'll share my feelings about the role that a principal at a

11   D.C. public school plays.  The principal at my kids' school was

12   directing traffic this morning, helping get the kids in the

13   building, so.

14         THE COURT:  So tell me who your other -- what your

15   other objections are.

16         MR. WOODWARD:  The other concern that we found over

17   the break was with respect to Juror 0712.  That is line 89.  At

18   the time that he -- the Juror 1- -- 0712 was subject to *voir*

19   *dire*, we were unaware of certain social media posts among

20   others, and we can pass them up for the Court.  This person

21   tweeted that if he had been amongst those involved on

22   January 6th, he would have been --

23         Is it shot or shot and killed?

24         MR. OLIVAS:  (Inaudible.)

25         THE COURT REPORTER:  I'm sorry.  I can't hear you.

```
1                    MR. WOODWARD:  If it had been me, I would have been

2        --

3                    MR. OLIVAS:  I would have been shot, and it was

4        a picture of --

5                    THE COURT REPORTER:  I'm sorry.  I can't hear you.

6                    MR. WOODWARD:  If it had been me, I would have been

7        shot.

8                    THE COURT:  All right.  But he was -- that's not his

9        statement.  It sounds like he's retweeting or posting a photo

10       of Dave Chappelle, the comedian, saying that.

11                   MR. WOODWARD:  In the context of January 6th, we

12       believe.

13                   THE COURT:  Okay.  Okay.

14                   MR. WOODWARD:  Thank you, Your Honor.  That's our --

15                   THE COURT:  Look, I don't think there's a --

16       certainly as to 0712, the stated concern about the social media

17       post is not problematic.  What may be problematic is if -- we

18       have learned that 0712 -- and JC is trying to confirm this --

19       may be getting married October 21st and needs to be out

20       October 20th.  So I'm waiting to hear back from JC about that.

21       So I'm trying to get all that sorted out before we -- before I

22       deal with the first request for a strike.

23                   While we are waiting on the jury, I wanted to address a

24       couple of discovery motions filed.  Before we get there, I want

25       to talk about -- let me just -- one thing I forgot to tell
```

1    everybody what I intend to do; once the entirety of the jury is

2    in the room, I want to ask them three additional questions:

3           One, whether they have continued to avoid media coverage

4    of the case during jury selection.  That's one.

5           Two is whether they have been approached by anyone

6    during the course of jury selection.

7           And three, whether it would be a hardship for any of

8    them to report for court at 8:30 every morning.

9           I was asking some of the jurors that, and I didn't do it

10   consistently; so I want to do that because of the arrangements

11   we are making to have them come to the courthouse.

12          Ms. Rakoczy.

13          MS. RAKOCZY:  Your Honor, just on that point, for the

14   same reason they have to report at 8:30, is there some later

15   end date that they need to be aware of to the extent that any

16   of them have childcare obligations?

17          THE COURT:  You mean at the end of the day?

18          MS. RAKOCZY:  Yes.  In other words, if we end at

19   5:00, would they not actually be able to leave until 5:30?

20          THE COURT:  I can ask that in the context of the same

21   question.

22          MS. RAKOCZY:  I just wasn't sure with respect to

23   what's going on with the semi-sequestration.

24          THE COURT:  Yeah.  I just assumed that if they had an

25   issue with the end of the day, they would have said something,

```
 1    but I -- we can confirm.
 2              MS. RAKOCZY:  Thank you, Your Honor.
 3              THE COURT:  So as I said, there were a couple of
 4    motions that were filed.
 5         Mr. Woodward, can you approach, and we'll put this
 6    portion under seal because I had a question about something.
 7              (Sealed bench conference held on the record with
 8    Mr. Woodward.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25              (Proceedings held in open court.)
```

```
 1              THE COURT:  Okay.
 2         Mr. Woodward, you can -- you don't need to be at the
 3    podium, but --
 4         So this issue was raised when we were together, I think,
 5    last week.  There was a request filed by Mr. Rhodes to
 6    subpoena -- I think it's about half a dozen -- cooperating
 7    witnesses for communications about their pleas.  I left it open
 8    and said, well, send me the subpoenas and your justification
 9    for seeking those records, and a motion was then filed at ECF
10    353.
11         That motion attaches, again, about half a dozen
12    subpoenas.  Each of the subpoenas asks for, quote, all
13    nonprivileged records to exclude correspondence with your
14    attorneys, your spouse, any medical provider, and any religious
15    and/or spiritual advisors concerning your guilty plea.  It
16    requests that any records be produced to Mr. Woodward, has his
17    email address and a date and time of October 1st at 12:00 a.m.
18         So I am -- I think I'm constrained to deny the request,
19    and here's why:
20         So Rule 17(c), the Court has said in U.S. v. Nixon that
21    it was not intended to provide a means of discovery for
22    criminal cases.  There are three requirements that a party
23    needs to meet in order to get a Rule 17(c) subpoena.  They are
24    showing relevance, admissibility, and specificity.
25         The burden of satisfying each of those three parts of
```

974

1    the *Nixon* test falls on the party requesting the information,

2    and the Supreme Court in *Cheney v. U.S. District Court* for the

3    District of Columbia, 542 U.S. 367 at 386, has called those

4    elements exacting, called them exacting standards.

5        Interestingly enough -- and I've read *Nixon* before.  I

6    can't say I noticed this part.  In the context of discussing

7    admissibility in *Nixon*, the Supreme Court actually observed

8    the, quote -- this is on page 702.  Generally the need for

9    evidence to impeach witnesses is insufficient to require its

10   production in advance of trial.

11       And as a result of that, a number of courts have

12   actually refused to permit subpoenas for pure impeachment

13   material, which is precisely what's being requested here.  It's

14   impeachment material.  There's no other basis for the evidence

15   that's being sought to otherwise be admissible.

16       Interestingly enough, in *Nixon*, the court actually

17   said -- and this is what they wrote:  That generally the need

18   for evidence to impeach witnesses is insufficient to require

19   its production in advance of trial.  Here, however, there are

20   other valid potential evidentiary uses for the same material,

21   and the court then permitted the -- found the subpoena to be

22   valid under Rule 17(c).

23       But not every court has sort of ascribed to such a

24   hard-and-fast rule.  And, in fact, Judge Walton in the *Libby*

25   case -- I don't have the case cite in front of me.  It's,

1    actually, 432 F Supp. 2nd at 26 -- has suggested that it may be

2    permissible to issue a 17(c) subpoena for impeachment material

3    in circumstances where, one, the witness is central to the

4    government's case and, two, where it is known what the witness

5    will say.

6            And, arguably, both of those criteria are met here with

7    respect to these cooperators.  But there's a recent decision

8    from Judge Contreras on a January 6th case.  It's called

9    *United States v. Fitzsimons*, 222 WL 3354709, delivered on

10   August 14th of 2022, and it's actually a January 6th case in

11   which the defendant tried to subpoena CNN for the -- for

12   footage of statements that the defendant -- excuse me -- the --

13   that an officer, I believe, had made to CNN.  Right.  A law

14   enforcement officer.

15           And the basic rationale for seeking that full -- that

16   full footage was that it might contain impeachment material and

17   provide a basis to identify inconsistent statements with what

18   the officer had said in other public statements.

19           Judge Contreras denied the request.  Among his reasons

20   is he found the request to be -- not to meet the relevance

21   standard.  He noted, for example, that the defendant did not

22   point out any way in which -- sorry.  He said the problem is

23   that the defendant has not provided any reason to think that

24   the CNN outtakes contain potential impeachment material.

25           He went on to say that Mr. Fitzsimons -- that is, the

976

1    defendant -- has identified -- in short, Mr. -- Mr. Fitzsimons

2    has identified a way in which the footage might be relevant but

3    has proffered nothing more than his own expectation that it

4    actually will be.  This falls well short of his burden.

5        He further writes that the relevance prong is not

6    satisfied merely because a defendant can articulate what they

7    hope to find in the subpoenaed evidence.  The Supreme Court in

8    *Nixon* held that the special prosecutor had, quote, made a

9    sufficient preliminary showing that each of the subpoenaed

10   tapes contained evidence admissible with respect to the

11   offenses charged and the indictment.

12       Other cases that have allowed defendants access to

13   third-party materials in similar situations have made express

14   findings that there was a reasonable likelihood the documents

15   contained relevant evidence, and he cites cases.  He goes on to

16   write:  In contrast, courts have quashed subpoenas based on

17   defendant's mere expectation about what could be recovered

18   without a showing of a sufficient likelihood that the documents

19   actually contained relevant evidence.

20       And based on that case law and those principles,

21   Judge Contreras found that the evidence that was being sought

22   was not -- didn't meet the standard of relevance.  It also

23   found that it did not meet the standard of admissibility.  He

24   wrote that it is Mr. Fitzsimons' burden to show with a

25   reasonable probability that the documents he seeks are relevant

1    and admissible.  Just noted that despite that, the fact that

2    the law enforcement officer's other public statements are known

3    to him, the defendant has not directed the court's attention to

4    anything that would suggest a reasonable likelihood that the

5    law enforcement officer will testify inconsistently with any of

6    his previous statements; and the court declines to speculate

7    that -- speculate.  And he's referring to the potential for

8    inconsistent statements.

9        I'll also note that the circuit in *In re Sealed Case,*

10   121 F.3d 729.  This is at 754.  This is in the context of -- of

11   overcoming a presidential privilege, but in the context of

12   that, the court observed that in practice, what the court

13   said -- the court was talking about context of the Rule 17(c)

14   in evaluating or overcoming presidential privilege.  It said:

15   Since 17(c) precludes use of a trial subpoena to obtain

16   evidence that is not relevant to the charges being prosecuted

17   or where the claim that subpoenaed materials will contain such

18   evidence represents mere speculation.

19       But to the extent that Rule 17(c) allows a defendant to

20   subpoena evidence, that would be only tangentially relevant or

21   would relate to side issues, the first component of the need

22   standard that is to overcome the privilege would come into

23   play.  And in then making that observation about Rule 17(c),

24   the court quotes *Nixon*, in which I quoted earlier, which is

25   that generally the need for evidence to impeach witnesses is

1    unsuff- -- insufficient to require its production in advance of

2    trial.

3           And so -- look, I think the case law is basically

4    aligned against the defendants in the manner in what they -- in

5    what they've requested and the way in which they requested it.

6    And they may be constrained in what they can represent; that --

7    nevertheless, the law, seemingly, is unforgiving about that.

8           But the only representation that has been made to

9    justify these subpoenas are two.  One is sort of speculation

10   that Mr. Rhodes knows these individuals and they would not have

11   pled guilty had they not been pressured to do so.  You know,

12   again, that's pure speculation, and it's certainly not the kind

13   of preliminary showing that the Supreme Court in *Nixon* referred

14   to.

15          The other justification for this is that Mr. James' wife

16   posted something online in which she wrote:  As you have

17   probably seen, we have made the difficult decision as a family

18   to accept a plea agreement.  We made that choice -- we made the

19   choice that makes it more likely that Josh would be home sooner

20   than later instead of risking our future on a trial that would

21   likely take away many years of his life and deprive him of the

22   chance to raise his children.  After a year of being in the

23   thick of it and many lengthy talks with our attorneys, this

24   plea best protects our hopes and we will remain a family.

25          The first observation is that's the only public

1   statement any defendants have been able to point to from any of

2   the cooperators that would suggest any inconsistency or

3   potential inconsistency with their upcoming testimony.  So

4   insofar as that proffer goes, it doesn't apply to anyone other

5   than potentially Mr. James.

6           As for Mr. James, you know, this was a statement posted

7   by his wife.  And, actually, as I read the statement, there's

8   nothing in here that suggests that Mr. James was actually

9   backing away from accepting responsibility.  The defendant has

10  argued -- Mrs. James' comments suggest that Mr. James'

11  acceptance of his plea agreement was motivated by reasons other

12  than his desire to accept responsibility for the crimes for

13  which he was charged.  I don't think that's an accurate

14  characterization of what she wrote.

15          And, in fact, it seems to me she's suggesting

16  potentially otherwise by saying that by accepting a plea, he

17  would be home sooner than later instead of risking our future

18  on a trial that would likely take away many years of his life

19  and deprive him of a chance to raise his children; which

20  suggests to me that Mr. James -- or at least through his

21  wife -- was calculating the -- the likelihood of both being

22  convicted at trial and the likelihood of a conviction resulting

23  in a far longer sentence than he might receive if he accepted

24  responsibility and took a plea, which is a calculation that

25  many defendants who accept plea agreements take.

1          And so for those reasons, I will deny the motion insofar

2     as the subpoenas that are sought for the cooperators, and one

3     thing I'll also note is that the subpoena is also

4     problematic -- although this really could have been narrowed.

5     But the subpoenas are not consistent with what was requested.

6     The request initially was time limited to, I think, a month

7     before and two months after.  This subpoena as drafted asked

8     for all nonprivileged records without any time restriction.

9          The subpoena is also -- again, this could be cured.

10    But, still, it's deficient in that it's asking for production

11    of the records to Mr. Brand directly in his email; whereas I

12    think Rule 17 contemplates that the subpoenas would have to be

13    returned to the Court and that the Court would then, in its

14    discretion, determine whether the government could take a look

15    at those documents.  So there's some procedural deficiencies

16    too.  And so if there's a basis to renew the subpoena, just

17    bear that in mind.  Okay?

18              MR. WOODWARD:  Thank you, Your Honor.

19              THE COURT:  Thank you.

20         How are we doing?

21         Mr. Douyon tells me that we're still waiting on six

22    jurors, which is what I worried about.

23         Mr. Woodward, while we're at it, now that JC's back, I

24    think he can turn the husher on, and you and I can have the

25    conversation I wanted to have at the bench ex parte.

981

```
1              (Sealed bench conference held on the record with
2       Mr. Woodward.)
```













```
1
2
3
4
5
6
7
```

8        (Proceedings held in open court.)

9        THE COURT:  Counsel, so we've made some progress.

10  We're now up to 44 jurors who are here.  Let me just tell you

11  the numbers that are still missing.  The juror on line 14,

12  1560; the juror on line 31, who is 1150 -- and you-all may

13  recall, that's the juror who has international travel starting

14  November 18th with his son, I believe, for about a week; and

15  then the juror on line 8, which is Juror 0800.

16        So we have 44 here.  We need 41.  We can give it a few

17  more minutes, but otherwise I'm prepared, with your consent, to

18  move forward with those who are here.

19        MR. FISCHER:  Your Honor, could you repeat the first

20  juror?

21        THE COURT:  Of course.

22        Juror 1560 on line 14.

23        MR. NESTLER:  Can I ask, Your Honor.  I assume that

24  court staff has tried to contact these prospective jurors.

25        THE COURT:  They have.

1        MR. NESTLER:  Is there any update on ability to

2    contact or just no contact and no arrival?

3        THE COURT:  JC, do we know whether they've had -- I

4    mean, I assume if they've had contact, they would have told

5    them to come in, but I assume -- we have had no communication

6    with these three, despite the efforts.

7        THE COURTROOM DEPUTY:  I'm not sure if they actually

8    called these jurors.

9        THE COURT:  Oh.  Okay.  Yeah.  Let's see if we can

10   contact them, although I don't know -- would we have their cell

11   phone numbers?

12       THE COURTROOM DEPUTY:  I can ask.

13       THE COURT:  The issue may be that what we do is we

14   update -- the jurors are told to call the evening before the

15   next day, and it may be that these three jurors did not do that

16   and, therefore, did not know they needed to come back today at

17   3 o'clock.

18       Mr. Douyon is now checking whether we can identify --

19   you know, find cell phone numbers for these folks to contact

20   them.

21       MR. FISCHER:  I apologize.  I don't think everybody

22   on our team knows all the juror numbers.

23       THE COURT:  Let me read them to you again.  I'll do

24   it in order.  On line 8 of your panel sheet, it's Juror 0800;

25   line 14 of your panel sheet, Juror 1560; and line 31 on your

1    panel sheet, Juror 1150.

2         I'm now told the jury office has called the list of

3    jurors but did not get a response.

4         MR. NESTLER:  We suggest five minutes.

5         THE COURT:  Okay.  If the defense -- let me ask

6    defense counsel, if we do not get these three jurors back,

7    would you be prepared to proceed to selection without those

8    three jurors?

9         MR. CRISP:  We would ask probably for ten minutes to

10   reorganize our strike list because of that because there are

11   some that are implicated on that.  Does that make sense?

12        THE COURT:  Sure.

13        Okay.  Well, let's do this --

14        MR. CRISP:  But yes.  And to answer your question, we

15   would.

16        THE COURT:  Right.  But you would need a few minutes.

17        We're going to need a few minutes.  Are they organized

18   and in order?  We'll have to take a few minutes to get them

19   organized, in any event, and we should probably just get that

20   started now.  Yeah, let's go ahead and start that now.

21        So it's 3:30.  Just -- we'll give it until 3:40 and see

22   if anybody else shows up.

23        MR. TARPLEY:  Thank you, Your Honor.

24        THE COURT:  And, Counsel, do you-all have the

25   diagrams that JC put together about where folks will be seated

1    out in the gallery?

2             MS. RAKOCZY:  Yes, Your Honor.  Thank you.  That's

3    very helpful.

4             THE COURT:  If you don't, then ask him and we can get

5    you a copy.

6             Counsel, we have an update.  We have confirmed that

7    Juror 0712 -- the juror who I said may have a wedding -- I'm

8    told the juror can now fully sit on 10/20, which is the

9    Thursday, but would have a conflict on 10/21, which would be

10   the half day we would try to sit on Friday.

11            MR. TARPLEY:  What number?

12            THE COURT:  Sorry?

13            MR. TARPLEY:  What number?

14            THE COURT:  This is Juror 0712, line 89.

15        So depending on how many people we have, I'm going to

16   potentially strike him for cause for unavailability because I'm

17   not interested in losing a half day.

18        All right.  So hopefully JC will have everybody lined up

19   in a couple seconds.

20        Two loose ends.  Juror 0751, this is the juror -- I'm

21   sorry -- 0712, this is the juror who we just learned is getting

22   married.  He is unavailable Thursday, the 20th.  We've also now

23   been told that he is -- he's available Thursday, the 20th, but

24   is unavailable the 21st and cannot -- we asked -- cannot even

25   sit the half day.  So unless there's an objection, I'm going to

```
1    strike that juror for cause.
2              MR. TARPLEY:  I apologize, Your Honor.  Your Honor,
3    what number was that, one more time?
4              THE COURT:  This is Juror 0712, line 89.
5              MR. TARPLEY:  Thank you, sir.
6              THE COURT:  And because we are now down to
7    43 qualified jurors -- we qualified 47, 3 have not shown, and
8    we just lost one -- I'm not going to excuse the principal based
9    on hardship because no one -- one cannot know what will happen
10   between today and Monday.  We need all the qualified jurors we
11   can.
12             MR. NESTLER:  To be clear, Judge, we do not object to
13   striking 0712 based on unavailability in response to
14   Your Honor's question.
15             THE COURT:  All right.  Thank you.
16         Does the defense agree with that?
17             MR. WOODWARD:  Yes, Your Honor.
18             THE COURT:  Were you --
19             THE COURT REPORTER:  I have Mr. Woodward, but that
20   was it.
21             THE COURT:  Okay.  Just to be clear, so the -- so the
22   defense does not object to striking for cause 0712?
23             MR. WOODWARD:  That's correct, Your Honor.
24             THE COURT:  Okay.  So when JC brings these folks in,
25   he is not going to fill the seats that otherwise would have
```

1    been filled by jurors who should be here.  So, for example,

2    wherever Juror 1150 would be seated out there, that seat will

3    be empty.

4            MS. RAKOCZY:  I think, Your Honor, two of the people

5    who aren't here were in the box.  So will those seats also be

6    left blank?

7            THE COURT:  No.  Well, obviously, if they're in the

8    box, we'll fill them in.

9            MS. RAKOCZY:  Okay.  Just trying to figure out

10   whether to renumber or not.

11           THE COURT:  No.  This is just in the gallery.

12   Because if you're in the box, you're in the box.

13           MR. NESTLER:  Right.  They're being filled in

14   sequence, not backfilled?

15           THE COURT:  Correct.

16           MR. NESTLER:  Thank you.

17           MR. LINDER:  I have a procedural question.  I

18   anticipate for the record making an objection to the panel and

19   requesting two additional strikes; for the defense team to

20   strike two people that we were unable to strike because of the

21   15 strikes that we do have.  And so I don't know the -- the

22   procedure you would like to do as far as -- I would assume you

23   would want me to do that while the jurors are in the room.

24           THE COURT:  Right.  No.  You can -- is there anything

25   more you want to add?

1          MR. LINDER:  Sure.  I'll put it on the record.

2          Okay.  Your Honor, it's our understanding -- we haven't

3     seen the government's strikes yet, but it's -- it's our belief

4     that Juror No. -- line No. 34, numbered 1186; and line No. 37,

5     Juror No. 1262 would potentially end up on the jury.  We've

6     used all of our 15 strikes on people we believed we needed to

7     use them on more than these two, but we would like to request

8     two additional strikes to strike these jurors for the following

9     reasons:

10         Juror No. 1186, who appears on line 34, either lives on

11    Capitol Hill --

12         MR. CRISP:  One moment, Your Honor.

13         MR. LINDER:  Sorry, Your Honor.  One -- one

14    additional strike for the juror that appeared on line 37.  We

15    were able to take care of 34 with the other addition we did a

16    minute ago.

17         The juror who appears on line 37, who is 1262, had a

18    spouse who's a lawyer for the Department of Justice.  We

19    believe that's a conflict of interest.  We would request an

20    additional strike to use on that juror.

21         THE COURT:  Okay.  So that request will be denied.

22    It's -- the juror's spouse working at the Department of Justice

23    in the civil division -- I think she was in federal programs --

24    that doesn't present a conflict with lawyers here who are from

25    the U.S. Attorney's Office.

1          MR. LINDER:  Thank you, Your Honor.

2          THE COURT:  So the best-laid plans sometimes get

3     waylaid.  We're now sort of hanging by a string.  Even though

4     two jurors reported in, they are now MIA.  They are jurors on

5     line 42, 1294; and the juror on line 86, 0366.  And as JC

6     reminded me, he was the person who kind of came back late from

7     lunch.  And that means we are down to 42 qualified jurors --

8     really 41, if I include the gentleman we just struck.

9          Which leaves us in a very precarious position for the

10    following reason:  We can go through jury selection today, but

11    if we lose somebody over the weekend, I'm not starting this

12    trial with less than 16 jurors.  So unless a couple people show

13    up, this is what I'm prepared to do -- and we'll roll the dice

14    a little bit, I guess.  I'm going to unstrike the gentleman who

15    has the wedding.  If he turns out to be seated, we just won't

16    sit on that Friday.

17         And if for whatever reason we end up with less than 16

18    returning on Tuesday, we're going to have to bring in more

19    jurors to get qualified, and we'll start -- I'm sorry.  On

20    Monday.  We're going to have to bring in more jurors.  I

21    just -- given the length of this trial starting with -- as you

22    can already see, having less than 16 is really a -- it would be

23    unwise to go forward with less than that.

24         MR. LINDER:  Would there be an effort to reach out to

25    the ones that have already --

994

1          THE COURT:  Well, that's fair, Mr. Linder.  I mean,

2    you're right.  We could -- what we could do is qualify -- we

3    could seat a jury today.  If everybody was in agreement with

4    this, we'd seat the jury today, including the gentleman -- we

5    would include the gentleman who I said we would strike, but

6    we're going to unstrike him.  That gives us 42 qualified.

7          We could also continue to make efforts to find the three

8    who did not even come back to the courthouse and the two who've

9    now sort of disappeared and require them to show up on Monday,

10   too, in the event we need somebody to fill in for somebody who

11   otherwise should have shown up.

12          MR. LINDER:  Right.

13          THE COURT:  Is that a plan that would be acceptable

14   to everyone?

15          MR. LINDER:  We -- we'll support that.  I mean,

16   they've already been qualified.

17          THE COURT:  Right.

18          MR. LINDER:  I think they have a duty to be back.

19          THE COURT:  Right.

20          MR. LINDER:  And if we can -- and we don't -- I don't

21   think anybody could work -- most of us cannot work tomorrow.

22   So if we seat the jury today with the alternate -- the Plan B

23   is to try to get the other four or five back on Monday.

24          THE COURT:  I think it's a good idea that we should

25   call them back, in any event, so that we have a bullpen in case

1    we lose one of our jurors over the weekend.

2              MR. LINDER:  Thank you.

3              THE COURT:  Okay.  So just to recap.  We do not have

4    1294 here, line 42; and we do not have line 86, 0366.  And I am

5    reinstating 0712 on line 8.  Okay?

6         All right.  With that, let's go ahead and bring our

7    potential jurors in.

8         Are you-all prepared to exchange your strike sheets as

9    soon as they're seated?

10             MS. RAKOCZY:  Yes, Your Honor, I think the government

11   is.  Yes, Your Honor.

12             MR. LINDER:  Yes, we're ready.  We are.

13             THE COURT:  Okay.  Great.

14             MR. NESTLER:  The answer is yes, but we do want to

15   see them seated first to make sure that the ordering is as we

16   think it's going to be.

17             THE COURT:  Fair enough.  And hopefully we don't lose

18   anybody between the hallway and the front door.

19             (Proceedings held in the presence of the jury

20   venire.)

21             THE COURT:  Have a seat, everybody.  It's okay.  This

22   is going to take a few minutes.

23             JC.  JC.

24             THE COURTROOM DEPUTY:  Yeah.

25             THE COURT:  Sorry.

1          Folks, just bear with us, please.  This is slightly

2    logistically more challenging than it ordinarily is.

3          So for the jurors who are in the courtroom, I'll ask you

4    to just listen up.  You may need to do some moving around in

5    the box.  We're just trying to get everybody organized in a way

6    that allows us to proceed.  So listen to Mr. Douyon.  He will

7    tell you what seats you should be in.  It may be different than

8    the seat you are currently in, and some of you who are seated

9    in the first row in the gallery are likely -- will be moved to

10   the box.  Okay.

11              THE COURTROOM DEPUTY:  Seat 14, Juror No. 0952.

12              THE PROSPECTIVE JUROR:  No.

13              THE COURTROOM DEPUTY:  Oh.  I'm sorry.

14         Okay.  I need everybody to -- I need everyone to come

15   out of the box.

16              THE COURT:  Yeah.  Why don't you have everybody come

17   out, JC, and just fill in from left to right.  Make it easy.

18              THE COURTROOM DEPUTY:  Juror No. 14 [sic], this will

19   be this seat right here.

20         Everybody -- everyone can come out of the box.

21         Juror 0952, Seat 14.  13 is Juror No. 1038.  Seat 12 is

22   Juror No. 0769.  Seat 11, Juror 1301.  Seat 10, Juror No. 1140.

23         Seat 9, Juror No. 1489.  Seat 8, Juror No. 1233.  And

24   Seat 7 is the seat with the sticky note on it.  Seat 7 is Juror

25   No. 0926.  Seat 7 [sic] is Juror No. 0671.

```
 1              Seat 5, 1149.  Seat 4, 1264.  Seat 3, Juror No. 1416.

 2     Seat 2 is 1342.  And Seat 1 is 1128.  Seat 15 right here, Juror

 3     No. 1186.  And Seat 16 is Juror No. 0910.

 4              THE PROSPECTIVE JUROR:  15 where?

 5              THE COURTROOM DEPUTY:  Right here.

 6              MR. CRISP:  Your Honor, may we approach?

 7              THE COURT:  Sure.

 8              (Bench conference held on the record.)

 9              MR. CRISP:  The problem this creates for us is if you

10     change the alternates, the alternate seat numbers are different

11     than what they have been because of misplacement.  So now we

12     would have to go back and look again because we didn't consider

13     any strikes on the alternate seats pending going through the

14     first iteration.

15              THE COURT:  Do what you need to do.  This is --

16              MR. CRISP:  So I'm going to ask if we can go back and

17     give us ten more minutes to go back and figure out the

18     first-in-the-box strikes and how that affects that.

19              THE COURT:  It's going to take a few minutes to seat

20     these folks.  So go ahead and get started.  I mean --

21              MR. CRISP:  Okay.

22              THE COURT:  I'll give you whatever time you need.

23              MR. CRISP:  I know.  And I'm not blaming.  I'm just

24     saying.

25              THE COURT:  This is far more chaotic than I'd hoped
```

1    it would be.  We should have put GPS on all these folks.  Okay.

2              MR. CRISP:  Roger.  Thank you.

3              (Proceedings held in open court.)

4              THE COURT:  Okay.  Ladies and gentlemen, welcome back

5    to all of you.  I'm going to thank you again for your patience

6    with us.  This has been a long three-day process.  For any of

7    you who have been through this before, it usually takes much

8    shorter.  But because of the nature of the case, it has taken

9    us three days to get to the point we arrived at now.

10             You are all here as potential jurors who will serve in

11   the trial.  So we have gotten past the first phase of our jury

12   selection process, and we are now about to enter the last

13   phase, or the second phase, of the jury selection process where

14   we winnow down those of you who remain to the 16 of you who

15   will be jurors who will sit in this case.

16             Those of you who are familiar with jury selections or

17   jury -- or trials, in criminal cases typically you have

18   14 jurors, but because of the length of this trial, we're going

19   to 16; meaning we have two more alternate jurors than we

20   usually do.

21             So what will now happen is as follows -- actually,

22   before any of that happens, I have three questions for each of

23   you, and I would just like if any of you have a yes answer to

24   any of the following questions, just please raise your hand.

25   Okay?  We're not going to have each of you come up to answer

1    these questions.

2         The first question is:  Have any of you been exposed

3    to -- that is read, seen, or heard -- any media about this case

4    since we began jury selection?

5         Okay.  No one has raised their hand.

6         Question 2:  Has anybody approached you to discuss this

7    case since we began jury selection?

8         Again, no one has shown their hands.

9         Finally, it is my expectation that the trial day will

10   last approximately from 8:30 to a little bit after 5 o'clock

11   each day.  That is, we will be asking you to report at 8:30 for

12   a trial day that will begin around 9:30 and that is expected to

13   end at 5:00.  That's Monday through Thursday.  Would reporting

14   to -- for jury service at 8:30 create a hardship for anyone?

15        And would remaining here in the courthouse until

16   approximately 5 o'clock every day create a hardship for anyone?

17        Okay.  Thank you, all.

18        So what will happen now is that the lawyers are going to

19   do a little bit of work, and then we're going to play a little

20   bit of musical chairs.  Please be patient with us.  I promise

21   you we are getting close to the end.

22        And while you remain seated, again, same rules apply as

23   before.  You can talk amongst yourself quietly, use your

24   devices, if you wish but, again, reminders about no access to

25   media, communicating with anybody about the case, or discussing

1    the case with anyone while we are in this final phase.

2           All right.  Thank you all very much.  We appreciate your

3    patience and your service.

4           MR. NESTLER:  Your Honor, may we approach?

5           (Bench conference on the record.)

6           MR. NESTLER:  Your Honor may have left the jurors

7    with the impression we were not sitting on Friday.

8           THE COURT:  What's that?

9           MR. NESTLER:  Your Honor may have left the jurors

10   with the impression we were not sitting on Friday because you

11   said Monday through Thursday.

12          THE COURT:  Oh.  Okay.

13          MR. NESTLER:  But you didn't say Friday at 8:30.  I

14   just wanted to make sure of that.

15          THE COURT:  Okay.

16          MR. NESTLER:  And the other issue, Your Honor was

17   going to ask if they knew any of the other jurors.

18          THE COURT:  Right, right, right.  Thank you for

19   reminding me.

20          MR. NESTLER:  Thank you.

21          (Proceedings held in open court.)

22          THE COURT:  Folks, just a couple of things.

23   Government counsel reminds me that I may have left you with the

24   impression that we won't be sitting on Friday.  We will be

25   sitting on Fridays but only for half days.  So the question

```
 1    about hardship reporting at 8:30 would also extend until -- on

 2    Fridays, but those will only be half days, until about 12:30 or

 3    so.

 4          The second question is one that we typically ask but we

 5    couldn't because of the nature of the jury selection process.

 6    Is that -- is whether you recognize any other juror in the

 7    courtroom.  And so it's a little bit difficult with masks, but

 8    I'll ask each of you to turn your heads around a little bit and

 9    take a look at your fellow jurors, and if any of you recognize

10    each other, please raise your hands.

11          Okay.  All right.  No hands are raised.

12          So we can keep moving ahead.  Thank you for the

13    reminder.

14          Mr. Crisp, how much longer do you think you need?

15            MR. CRISP:  Two minutes.

16            THE COURT:  Great.

17          All right.  Counsel, are you-all ready?

18          All right.  Let's go ahead and exchange your lists,

19    please.

20          Counsel, are you ready?  Let's hand up your sheets,

21    please.

22            THE COURTROOM DEPUTY:  Please come to order.

23          I'm going to do a little reshuffling again.

24          The new juror in Seat No. 8 is Juror No. 1542.  The new

25    juror in Seat No. 6, Juror No. 1034.  New juror in Seat 5,
```

1    Juror No. 0925.  And 1034 is in Seat 6.

2            MS. RAKOCZY:  Your Honor, I apologize for

3    interrupting.  We may have slightly different records.  If we

4    could approach at some point.

5            THE COURT:  Ms. Rakoczy, do you-all want to approach?

6            MS. RAKOCZY:  Yes, Your Honor.  Thank you.

7            (Bench conference held on the record.)

8            MS. RAKOCZY:  So, Your Honor, what we noticed first

9    was we did not have the juror in Seat No. 8, who is Juror 1233

10    by our records, or line 17.  We did not have that person being

11    struck.

12            So Row 17, Juror No. 1233, we believe that person was

13    seated in Seat 8.

14            THE COURT:  Right.

15            MS. RAKOCZY:  And that person was just removed, but

16    we did not have that person as being struck.

17            MS. HALLER:  But that person was struck.

18            THE COURT:  Let me see your strike sheets.

19            THE COURTROOM DEPUTY:  You have 1533 and you have the

20    second page.  Yeah, I don't have it struck on mine.

21            THE COURT:  Okay.  So 1233 is what you're telling us

22    should be in Seat 8; right?

23            THE COURTROOM DEPUTY:  Yes.

24            MS RAKOCZY:  Your Honor --

25            THE COURT:  So we now have 1542 in that seat, JC?

1    THE COURTROOM DEPUTY:  Yes.  So it seems we put 1542
2    in Seat 15.
3    THE COURT:  Is that all we need to change?  Was that
4    the only person you changed in the back row?
5    THE COURTROOM DEPUTY:  That's the only one in the
6    back row.
7    THE COURT:  Okay.  So all we need to do, then, is put
8    1542 -- put 1233 back in 8 and put 1542 in Seat 15.  Is that --
9    MS. RAKOCZY:  It's a slightly different reordering
10   than we had come to.
11   THE COURT:  Okay.
12   MS. RAKOCZY:  Redoing the math is hard.  So I guess
13   we -- we were assuming that first person to move into an empty
14   seat would have been the person in Row 37.  So Row 37,
15   Mr. 1262.  And we had that person moving into Seat 1.
16   THE COURT:  Right.  We did too.
17   MS. RAKOCZY:  Okay.  And then we had next, the person
18   in Row 40, Juror 1350, moving into Seat 3.
19   THE COURT:  Okay.
20   MS. RAKOCZY:  And then line 44, Juror 1207 moving
21   into Seat 4.
22   THE COURT:  Right.
23   MS. RAKOCZY:  And then Row 46, Juror 0925 moving into
24   Seat 5.
25   THE COURT:  Uh-huh.  Yep.

1    MS. RAKOCZY:  And then Row 52, 5-2, Juror 1034 moving

2    into Seat 6.  And then 7 as an alternate was not struck.  For

3    Juror No. 8 then -- or Seat No. 8, that person was not struck.

4    Seat No. 9 was not struck.  Seat No. 10 was not struck.

5    Seat No. 11 is an alternate and was not struck.  Seat No. 12

6    was not struck.  Seat No. 13 was struck.  And the next person

7    in the gallery would've been line 55, 1542, filling in for 13.

8    THE COURT:  Okay.

9    MS. RAKOCZY:  And then Seat 14 was not struck as an

10    alternate.  And then the next person after Row 55 is the next

11    page, Row 61.  Juror 0903 we had as going into 15.

12    THE COURT:  Okay.

13    MS. RAKOCZY:  Row 61, 0903 we had going into row --

14    Seat 15.

15    THE COURT:  What happened to 0- -- Okay.

16    MS. RAKOCZY:  The last seat we filled was Seat 13,

17    with the juror in Row 56 for 1542, and after that we -- having

18    been struck at some point or another all the way to Row 61.

19    THE COURT:  Is that consistent with what you have too

20    now?

21    THE COURTROOM DEPUTY:  Yes.

22    THE COURT:  Yeah.  I think -- I mean, I think you're

23    right, Ms. Rakoczy.  Thank you for --

24    THE COURTROOM DEPUTY:  I think we struck 8 instead of

25    13.

1            THE COURT:  Right.  I think that's what happened.  We

2    jumped the gun too -- I jumped the gun too quickly.

3            So the bottom line is we right now need to change --

4    we need to put 1233 back in Seat 8.  We need to move 1542 into

5    Seat 13, and then we need to put 093 [sic] in Seat 15?

6            MS. RAKOCZY:  That's consistent with what the

7    government has.

8            THE COURT:  Okay.

9            THE COURTROOM DEPUTY:  We just need to change 13, 8,

10   and 15.

11           MS. RAKOCZY:  I think that's right.

12           THE COURT:  All right.  Okay.  Great.

13           MS. RAKOCZY:  Thank you, Your Honor.

14           THE COURT:  Thank you, all.

15           (Proceedings held in open court.)

16           THE COURTROOM DEPUTY:  Seat No. 15 is Juror No. 1542.

17           THE PROSPECTIVE JUROR:  That's me.

18           THE COURTROOM DEPUTY:  You'll be sitting in

19   Seat No. 13.

20           And Seat No. 13, you'll come out.

21           THE PROSPECTIVE JUROR:  The second row?

22           THE COURTROOM DEPUTY:  The second row.

23           Seat No. 8, Juror No. 1233 will return.

24           Just to confirm we have the right juror, Seat 6 should

25   be Juror No. 1034.  Seat 5, Juror No. 0925.  Going into Seat 4

1    will be Juror 1207.  And Seat 3 will be Juror No. 1350.

2        So you can come out.

3        You'll be 1207, Seat 4.  Seat 3 is Juror No. 1350.

4    Seat 1 will be Juror No. 1262.  And Seat 15 will be Juror

5    No. 0903.

6        THE COURT:  Ladies and gentlemen, those of you who

7    are seated in the back, I'm just going to make sure we have all

8    of you in the right place.  So Mr. Douyon is going to go by

9    seat number from 1 through 7 across here and 8 through 14 and

10   15 and 16 just to confirm that we have the right jurors in the

11   seat.  Okay?  Bear with us, please.

12       THE COURTROOM DEPUTY:  Juror in Seat 1, Juror No.

13   1262.  In Seat 2 is Juror No. 1342.  Seat 3, Juror No. 1350.

14   Seat 4, Juror No. 1207.  Seat 5, Juror No. 0925.

15       Seat 6, Juror No. 1034.  Seat 7, Juror No. 0926.  Seat

16   8, Juror No. 1233.  Seat 9, Juror No. 1489.  Seat 10, Juror No.

17   1140.

18       Seat 11, Juror No. 1301.  Seat 12, Juror No. 0769.  Seat

19   13, Juror No. 1542.  Seat 14, Juror No. 0952.  Seat 15, Juror

20   No. 0903.  Seat 16, Juror No. 0910.

21       THE COURT:  All right.  Counsel, just let me know

22   when you-all are ready.

23       I promise we are getting very close.

24       MR. NESTLER:  Your Honor, would you mind putting the

25   husher on for the courtroom?

```
 1                THE COURT:  Sure.

 2           Counsel, just a couple more minutes, please.

 3                MR. CRISP:  May I approach the clerk, Your Honor?

 4                THE COURT:  (Nods head.)

 5           All right.  Counsel, one more minute before I need

 6      you-all to exchange your sheets.

 7                (Bench conference held on the record.)

 8                MR. LINDER:  Ed and I have go to the airport, and Lee

 9      and David have already left; so Stewart doesn't have a lawyer

10      here, but he's given his proxy to Stanley or David.  And since

11      we're down to the last part of it, they can figure it out.

12                THE COURT:  Okay.  Thanks.  I appreciate it.

13                MR. LINDER:  See you Monday morning.

14                MS. RAKOCZY:  Thank you, Your Honor.  We'll call.

15                MR. LINDER:  Thank you, Judge.  We'll see you on Zoom

16      or talk this weekend.

17                MS. RAKOCZY:  Thank you.  Have a safe trip.

18                (Proceedings held in open court.)

19                THE COURT:  All right.  Have you-all exchanged your

20      sheets?  Please do so now if you haven't done it yet.

21                MR. CRISP:  I'm just filling out the last part.

22                THE COURTROOM DEPUTY:  All right, everyone.  This is

23      your last round.

24                Seat 11 -- in Seat No. 2, it will be Juror 006.  In

25      Seat No. 7, it will be Juror 0481.  And in Seat 11 will be
```

1    Juror No. 0299.  That's Seat 11.

2              (Bench conference on the record.)

3              THE COURT:  Okay, everyone.  Everybody satisfied with

4    who we have in the box and that the number -- right jurors are

5    in the right place?

6              MR. FISCHER:  Yes, for defense.

7              MR. NESTLER:  Yes, Your Honor, for the government.

8              THE COURT:  All right.  Thank you.

9              (Proceedings held in open court.)

10             THE COURT:  It seemed a little chaotic, but I promise

11   you there's a method to our madness.  Those of you who remain

12   in the jury box and in front of the jury box, you-all will be

13   our jurors for this trial.

14             Those of you who are in the gallery and remain in the

15   gallery, you are excused.  We thank you very much for your

16   service.  Thank you for being here.  And you have my and the

17   court's appreciation.

18             (REPORTER'S NOTE:  The prospective jurors left.)

19             THE COURT:  Okay.  Ladies and gentlemen, I suspect

20   when you-all started the week none of you said, can't wait to

21   sit on a long jury trial, but here we are.  Thanks is not

22   enough.  We really appreciate each of your coming in here, your

23   candor to the Court and to the parties, and your willingness to

24   carry out your duty to serve.

25             None of this happens without you, and so we really are

1    thankful for your willingness and your commitment to serve on

2    this jury.  You-all are going to get to know each other very

3    well over the next five to six weeks.  You will possibly start

4    feeling like you are family.

5         So what will happen next is we're going to ask all

6    of you -- Mr. Douyon is going to take you to the courtroom next

7    door, ask each of you to please remain there because I'm going

8    to come over and give you some special instructions in a

9    minute.  So if all of you will go over to the other courtroom,

10   and we will be with you shortly.

11        Thank you very much.

12             (Proceedings held outside the presence of the jury.)

13             THE COURT:  Okay, everyone.  Have seats.  Thank you

14   for the last three days, and thank you for your diligence as we

15   were selecting all these folks.  With all the jurors dropping

16   out, it proved to be a little more challenging than ordinary.

17        So we will begin at 9 o'clock on Monday.  If there are

18   any preliminary matters, please let Mr. Douyon know by Sunday

19   evening or first thing Monday morning.  My expectation is to

20   the extent anybody is using exhibits in opening, you-all will

21   have exchanged those just to -- if there any objections, we can

22   get those cleared out of the way before anybody opens.

23        Let me ask you:  What is the current thinking in terms

24   of length of opening for the government?

25             MR. NESTLER:  Approximately an hour and 15 minutes,

 1    Your Honor.

 2              THE COURT:  Okay.

 3              MR. NESTLER:  And I did already show any exhibits to

 4    be shown in opening to defense counsel today.

 5              THE COURT:  All right.  And on behalf of the defense,

 6    starting with Mr. Rhodes, although his counsel is not here --

 7              MR. FISCHER:  Your Honor, I can speak for Mr. Rhodes.

 8    I think they anticipate at least an hour in opening argument.

 9              THE COURT:  Okay.  And then how about for

10    Ms. Watkins, Mr. Crisp?

11              MR. CRISP:  Sorry.  Thirty minutes.

12              THE COURT REPORTER:  Say that again.

13              MR. CRISP:  Thirty minutes.

14              THE COURT:  And then how about for Mr. Meggs?

15              MR. WOODWARD:  Same, Your Honor.

16              THE COURT:  And for Mr. Harrelson?

17              MR. GEYER:  I believe we're going to reserve.

18              THE COURT:  Okay.  And then Mr. Caldwell?

19              MR. FISCHER:  Forty-five minutes.

20              THE COURT:  Okay.  All right.  So -- okay.  So if my

21    math is correct, that should easily, obviously, take us through

22    the morning and into the afternoon.  But it also seems like

23    there should be some time to get started Monday afternoon; so

24    the government should have its witnesses ready to go.  Just a

25    reminder to notify defense counsel who those witnesses will be

1    24 -- really should be today -- before the prior business day.

2         Any questions?  Concerns?

3         Ms. Rakoczy.

4         MS. RAKOCZY:  Your Honor, the defense has noted some

5    objections to some statements that the government would plan to

6    introduce, some of which would come out through our first

7    witness, I believe.  And so we would just ask the Court to

8    consider finding maybe -- hopefully it wouldn't take more than

9    half an hour to resolve just the statements' objections that

10   have to do with that first witness.  So if we could have an

11   extended lunch break on Monday or an extended afternoon

12   break once --

13        THE COURT:  Why don't we plan to be here at

14   9 o'clock, then, on Monday, and we'll get through as much of

15   that as we can.  And if we need to move into the lunch hour,

16   we'll do that, but hopefully we can get it resolved.

17        MS. RAKOCZY:  Yes, Your Honor.  Thank you.

18        THE COURT:  Ms. Haller?

19        MS. HALLER:  And just to add to that, Your Honor,

20   what she said about the -- what counsel said about the

21   witnesses, we also just have one objection on the exhibit to be

22   used during the opening that we watched during lunch.

23        THE COURT:  Okay.

24        MS. HALLER:  If we can do that in the morning or

25   whenever --

1    THE COURT:  Okay.  Well, see if you can resolve it.

2    If it's not resolvable, then we'll take that up Monday morning.

3    MS. HALLER:  Okay.  Thank you.

4    THE COURT:  Mr. Fischer.

5    MR. FISCHER:  Thank you.

6    Just a couple of things.  The defense -- this can wait

7    until Monday, but we are going to renew our request to change

8    venue.  We'd just like to put some things on the record and

9    compose our thoughts so we don't take too much time.

10    And, secondly, I am -- hopefully today I can work with

11    Mr. Manzo to try to hash out the 801 statements of party

12    opponents that I had filed a motion on, but that could be an

13    issue.  It might take 10, 15.  If there's an issue, I plan on

14    submitting the statements to the Court.

15    THE COURT:  Is it something you plan to open on?

16    MR. FISCHER:  Well, Your Honor, I -- I plan on at

17    least alluding to some of the claims that were made.  I don't

18    plan on showing them the actual statements.

19    THE COURT:  Okay.  All right.  Well -- Mr. Manzo.

20    MR. MANZO:  Just to tee this issue up for the Court,

21    I expect we'll talk after court today and this weekend, but I

22    think the fear the government has with the statements are

23    that -- some of them are prior indictments in D.C.  The jury

24    does not get the indictment that's currently in place.  So

25    giving prior indictments could tend to confuse the jury; and

1    also the pleadings themselves and detention hearings and things

2    like that would require instructions from the -- from

3    Your Honor about -- you know, the core foundations of a

4    criminal jury trial that we think would tend to confuse the

5    jury.

6              THE COURT:  Well, let's do this:  Let's figure out --

7    you-all talk.  Let's figure out what you want to say,

8    Mr. Fischer.  If the government has an objection, let's see

9    where it is on Monday.  But let's -- let's plan to start at

10   9 o'clock so that -- everybody should be here -- try to get as

11   many of these issues out of the way before the jury arrives.

12   And on the first day, I really would like to start on time and

13   get things off on the right note.  Okay?

14         All right.  Thank you, everybody, for a lot of hard work

15   this week.

16         We will see everybody on Monday morning.  Thank you.

17              (Proceedings were concluded at 5:14 p.m.)

18

19

20

21

22

23

24

25

1       CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3           I, Nancy J. Meyer, Registered Diplomate Reporter,

4    Certified Realtime Reporter, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true, and complete transcript

7    of the proceedings to the best of my ability.

8

9                    Dated this 29th day of September, 2022.

10

11                   /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25