**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:22-cr-00015 (APM)** |
| | ) | |
| **KELLY MEGGS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT MEGGS MOTION FOR GOVERNMENT MODIFICATION TO THE DISCOVERY PROTECTIVE ORDER AT ECF NO. 123**

Defendant KELLY MEGGS, by and through his undersigned attorney requests that the government review the Protective Order from the original case 1:21-cr-00028-APM ECF No. 123 that is now consolidated under this case, and pursuant to Fed R. Crim P. 16 and if applicable under Fed Rule Civ. P. 34(a) that the government propose or deny a modified Protective Order for the parties and Court where the undersigned may receive from the government and release to the civil Plaintiffs (case 1:21-CV-02265-APM) any relevant portions of the Cellebrite extraction from Mr. Meggs' phone and any other discovery that is about him, such as grand jury testimony and 302 reports, given the civil court judge's interpretation of the language contained in the Protective Order, where he provides the following in support:

**I. Background and Facts**.

The undersigned was not Mr. Meggs's trial attorney in this criminal case. She did become his attorney in the criminal case's appeal (USCA #23-3089) in March 2025 and his attorney in the civil matter (1:21-CV-02265-APM) at the end of July 2025. His former attorney had to withdraw from both cases after joining the DOJ in January 2025. During those interim periods Mr. Meggs was unrepresented/was Pro Se.

Mr. Meggs never possessed discovery because he was incarcerated from the date of his arrest until the January 20th Presidential Proclamation that commuted his sentence. He occasionally received drives and a laptop at the D.C. jail where he could temporarily view some discovery or was visited by his attorney for discovery and trial exhibit review.

The undersigned for purposes of the criminal case appeal received only trial exhibits and otherwise downloaded docket materials. The same materials have been available to the Plaintiffs for years. Upon request to compare what was allegedly deleted from Mr. Meggs' phone, the undersigned received from a former trial attorney what appears to have been the un-scoped extraction referenced in discovery letter 1:21-cr-00028-APM ECF No. 148. This does not appear to be an acceptable "Cellebrite extraction."

The trial exhibits for 1:22-cr-0015-APM contain hundreds of emails and texts from before, on, and after January 6, 2021. Plaintiffs have access to all those.

In the USCP civil case, Plaintiffs claim a conspiracy where Mr. Meggs, who never met or directly corresponded with President Trump, allegedly caused them injury from exposure to tear gas/OC hours after he left the building (where exposure to the chemical is a normal part of their training) – when they never came into contact with Mr. Meggs and he was never charged with any conspiracy to do anything to USCP, or with assault, or with violence, or with use of any chemical agent.

The Plaintiffs' counsel for unknown reasons after 5 years of discovery where their main strategy has been apparently to default defendants has shifted to demanding  Cellebrite extraction reports and that defendants' devices be turned over because they "think" there is "responsive information" without identifying what could be responsive. At the February 12, 2026, status conference, Judge Mehta stated that Relativity contained terabytes of data and attorneys received

terabytes for work product and that there was an extraordinary amount of information that the criminal trial lawyers received where the Plaintiffs' general demand could be viewed as overbroad and burdensome. Cellebrite has highly private information and he was not going to order it turned over. The Plaintiffs needed to identify what could be relevant. Plaintiffs needed to identify discrete records if reasonable and ask for those. Perhaps Signal chats might fall into that category – Plaintiffs needed to be specific. Plaintiffs were to produce a list within a week, and then defendants were to then say whether they agree to call prior counsel and then work together on when they could get answers. Plaintiffs never did that. They just unreasonably demanded Cellebrite. Regardless, Mr. Meggs notified Plaintiffs that he had asked prior counsel. He continued to object to the overbroad demands for irrelevant material that was not in anyone's possession, when anything relevant was in the court record that Plaintiffs had full access to in the trial record.

Instead, after disregarding relevancy requirements, and Meggs' requests for redactions, the attached Order (1:21-cv-02265-APM ECF No. 491) was issued that completely contradicted what was said as far as Mr. Meggs was concerned.  The Order requires all counsel to ignore privacy and PII of others - without any consultation with the government regarding the criminal cases' Protective Orders. The undersigned had requested that the government first agree and second that if so, only redacted, relevant texts /emails from Mr. Meggs be included.

## II.  Legal Standard and The Protective Order.

"There is no general constitutional right to discovery in a criminal case. . ." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 845-46 (1977)(quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973). This has been argued under Brady and many other circumstances. Discovery is about fairness and preventing ambush at a criminal trial.

3

Protective orders involve not what the government allows the defendants to see, but what the defendant may not disclose. "[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." (quoting *Alderman v. United States*, 394 U.S. 165, 185, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). 21-cr-00028 ECF No. 120 at 4. And as may very well be applicable to public release of a Cellebrite extraction (which usually includes the execute software when transmitted to the defense): "[W]here public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order." *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013). *Id*.

The government with Mr. Meggs' consent concluded that the Protective Order should be issued

> to expedite the government's disclosure of discovery materials, and to adequately protect the privacy interests of the persons identified therein and the integrity of the government's on-going investigations and the security of witnesses, the government requests that pursuant to the Court's authority under Fed. R. Crim. P. 16(d)(1). . .

21-cr-00028 ECF No. 120 at 5

## III. Argument.

The undersigned has now been placed in an untenable position since the government has not been afforded an opportunity to weigh in on whether the Protective Order allows private information and PII of others to be released to civil Plaintiffs as well as the public in a completely unrelated civil case.

4

The Protective Order is the Government's position where it released information for the criminal trial for the defendants and counsel to prepare for trial, and where it specifically said information may only be used in a related appeal or case <u>by the defense team</u>. It does not authorize use by a civil defense team or release to the public. Discovery doesn't get filed with the court unless it's needed for something specific, such as being filed in a motion, or as evidence used during the trial. So, unless it is made public in filings or during trial, discovery stays out of public view. Even if the trial is over, the discovery does not become open to everyone and remains closed. Certainly Mr. Meggs could release his own communications or what he posted on-line if his accounts weren't shut down.

But nothing authorizes the criminal trial attorneys to release protective order material that was not presented at trial or in a motion, contains PII (email addresses or phone numbers of third parties, or especially if it contains the Cellebrite execution software that usually accompanies the Cellebrite extractions if it is to be given to an attorney in an unrelated civil case attorney to then hand over to Plaintiffs who are the equivalent of the public).

The undersigned requested to be able to redact and only respond to a specific request for Mr. Meggs' January 6th texts and was denied, inexplicably, despite previous oratory by the judge. The undersigned has what appears to be an un-scoped extraction where the judge denied redaction, in an unsupported, incredible claim that the Plaintiffs' attorneys should be trusted to not do anything untoward. That is rich since two – three times these attorneys falsely claimed to the Court that Mr. Meggs had not provided initial disclosures, and without any justification filed all defendants' (unredacted) discovery responses on the public docket. Yet the judge ordered complete Cellebrite to be handed over with PII for doxxing to occur against Mr. Meggs and his family who have received threats for years.

5

Notably, the material's disclosure largely belongs to the government. And the government refused to allow any discovery from at least one criminal case to be used in what appeared to be a completely related civil case about January 6th.  The government wrote about the Protective Order, "the order was relating specifically to the criminal matter before this Court and not to some future civil litigation in an entirely different court before a different judge." 1:21-cr-00268-CJN ECF No. 196  at 3. The government further expounded on the defense team as "any attorneys, investigators, paralegals, support staff, and expert witnesses who are advising or assisting defense counsel in connection with this case" and "the materials being provided were for exclusive use in connection with the criminal case before the Court." *Id*. Judge Nichols, the only district judge to get the 18 U.S.C. Section 1512(c)(2) law correct, refused to overrule the government. The government didn't differentiate as to whether the material was solely related to the defendant or anything else. it was all under the criminal case and that Protective Order. Like Mr. Meggs, that defendant had been incarcerated and never possessed his discovery.

Here, these Plaintiffs are in harassment mode. They have not listed anything relevant. They picked the defendants out of a hat. They didn't encounter a single one on January 6th. They had years to request via Touhy any materials for the civil matter before the U.S. became party and now are bullying defendants. In this process, Plaintiffs are placing all civil and criminal defense attorneys at odds with the terms of a criminal case Protective Order that was meant strictly for use in the criminal case and appeals.

There is a requirement for the government to get a vote. First, the definition of download requires clarification. Yes, it could mean "extraction." But if so, then why then didn't the Protective Order use that term instead of just inferring that it meant what the defendant downloaded from the internet? Did the government mean what the defendant downloaded from the internet or other

6

devices or did the government mean a Cellebrite or device extraction? If Cellebrite, did the government mean that every defendant could release that information or did the Protective Order just mean that regardless of classification the defendant was allowed to download and possess the Cellebrite? The civil court judge seems to think the Protective Order means that Mr. Meggs can release PII of third parties to anyone rather than just possess the material despite classification. The normal interpretation of the Protective Order just means he can possess it – not that he can release it. Third party PII is not releasable.

If the Protective Order is to be modified to mean that anything solely about defendant Meggs can be released to Plaintiffs, then he requests that it include the grand jury testimony about him and all FD 302s by agents about him, which the denied admission of at trial. This would align with the judge's current opinion that Cellebrite is releasable. Mr. Meggs is particularly interested in the testimony by USCP Officer Harry Dunn and the 302s/Jencks by Dunn who allegedly committed perjury along with SA Lazarus. Allegedly, USCP Officer Dunn recruited at least one Plaintiff to join the civil lawsuit.

This is a reasonable request made in good faith because the civil court has ordered that with no guardrails the civil case defense attorneys provide criminal case materials that were provided to criminal trial attorneys and the civil defense attorneys must demand all Cellebrite extractions. The undersigned is in a most precarious position being in the appeals case and not having received the exact Cellebrite extraction (only an un-scoped preliminary version) after having requested it solely for the criminal appeal. The criminal case attorneys having searched do not appear to have it, nor do they appear to have the government's authority to provide it. Because of this, the Government must provide its position since the Protective Order was a motion by the

7

government in the criminal case that was consented to by Mr. Meggs for materials in the criminal case.

**IV.  Conclusion.**

Wherefore, the government should provide its position in Response to the Protective Order.

MAY 4, 2026                                      Respectfully Submitted,

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, D.D.C. Bar No. FL-0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on the 4th day of May 2026, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, Esq.